NATIONAL ENAMELING CO. et al. v. NEW ENGLAND ENAMELING CO. et al.

(Circuit Court, S. D. New York. May 27, 1903.)

1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

Prior adjudications sustaining a patent, but which were entered by consent as the result of settlements between the parties, and in which the questions of the validity and scope of the patent were not considered by the court, are not sufficient as the basis for the granting of a preliminary injunction in a subsequent suit against another alleged infringer.

2. SAME—ENAMELED WARE.

The construction and scope of the Claus patent, No. 527,361, for enameled metal ware, *held* subject to so much uncertainty, in view of the limitations imposed by the file wrapper, that they could not be properly determined on a motion for a preliminary injunction, and such motion therefore denied, on condition that defendant give a bond to account for subsequent infringements.

In Equity. Suit for infringement of letters patent No. 527,361, for enameling metal ware, issued to Herbert Claus October 9, 1894. On motion for preliminary injunction.

Arthur v. Briesen and Louis Marshall, for complainant National Enameling Co.

Walter D. Edmonds, for complainant Lalance & Grosjean Mfg. Co.

Robert N. Kenyon and Walter F. Rogers, for respondents.

TOWNSEND, Circuit Judge. The first eight claims of said patent cover the articles of manufacture. The five succeeding claims cover the process employed to produce said articles. Complainants' affidavits fail to show infringement of the process claims. Upon this point complainants' expert, Prof. Chandler, while stating that he is of opinion that said process claims have been infringed, makes the following admission:

"As to whether the subjects of the remaining claims, 9 to 13, inclusive, being processes therein set forth, have or have not been used in the production of the said 'Exhibit Infringing Ware,' I cannot state as a positive fact, since I am furnished with no information as to whether the metallic salts, etc., therein referred to, were by the defendants applied to the enamel 'while still moist,' though I fail to see how they could have been applied otherwise."

As to the dip, or mixture used in the art of enameling, designated "Defendant's Dip," the complainants' affidavits fail to sufficiently show that it was taken from the defendant's factory. The argumentative and uncertain statements as to infringement of the process are insufficient, in view of the specific denials by defendant's witnesses.

The two prior adjudications sustaining the validity of the patent were entered by consent, as the result of settlements effected between the parties to said litigations. The question of the scope or validity of the patent was not considered by the court in either suit. The statements in the affidavits as to the circumstances under which said adjudications were secured are indefinite and conflicting. One of the

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 482, 484.

complainants' affiants asserts that he is informed and believes that as a result of said suit a large sum was paid to one of the owners of the patent; "my understanding being that said sum so paid was in excess of $200,000." Another affiant asserts upon information and belief that $10,000 was paid by each of the defendants in said suits in settlement thereof to said St. Louis Stamping Company, and, as a matter of fact, that large amounts, considerably in excess of the $10,000 aforesaid, were paid to the Lalance & Grosjean Company in satisfaction of its claims against said defendants. The affidavit of the president of the said St. Louis Stamping Company, however, fails to state any facts in reference to said litigation, or to the payment of any sum whatever in settlement thereof. The only statements made in defendants' affidavits to meet these indefinite allegations are to the effect that:

"It was always understood in the trade that the suits were never finished because the owners of the Claus patent did not dare to go ahead, that the whole suit was simply a trade suit, and that the parties got together and entered into a trade agreement among themselves to uphold prices, etc., and then agreed that they would all pretend that the Claus patent had been sustained."

Fortunately, however, the allegations in complainants' bill herein, and in a suit brought by them in the District of Connecticut against one Louis Haberman, and the opinion of Judge Coxe in one of the suits wherein an adjudication was had, furnish sufficient evidence for the determination of the effect of said adjudications. In the settlement of the litigation wherein said adjudications were obtained, three infringing firms bought out the half interest of the St. Louis Company in the patent in suit, and assigned it to the National Enameling Company, the complainant herein. The Haberman Company, one of the defendants in said suits, had been manufacturing for a number of years enameled ware in infringement of the Claus patent, in suit herein. Upon the transfer to the National Company, the Haberman Company received $5,163,200. Complainants allege that the tangible assets of said company "were of a value far less than the sum paid therefor, but that the secret processes and good will made up the balance." Thereafter the other complainant herein, the Lalance & Grosjean Company, which had also brought suit against said infringers, continued its suit for the sole purpose of raising the question as to whether the sale to and release by the other joint owner of the patent could defeat the rights of the Lalance & Grosjean Company to a recovery. The questions of the scope or validity of the patent were not presented to Judge Coxe. It would appear, from a statement in his opinion to the effect that the president of the St. Louis Company had indemnified the defendants, and must pay to the former defendants "whatever the Lalance & Grosjean Company recovers," that if large amounts were paid to the Lalance & Grosjean Company, as alleged by complainants, the moneys therefor were furnished by the joint owners of the patent.

In these circumstances, it is clear that said adjudications do not help complainants' case. The affirmative allegations of their complaints are forcibly suggestive of a trade settlement, such as is as-

serted in defendants' affidavits. The foregoing facts are pertinent, in connection with the affidavits, upon the question of acquiescence. The complainants merely allege in general terms that there has been no infringement since 1899, that the public generally have acquiesced, etc. During the first five years of the life of the patent it had been infringed by the three firms, which made a settlement by which they became the owners of a one-half interest therein. The affidavits of defendants state that the American Stamping Company also made' and sold about $500,000 worth of infringing ware per year from 1894 till 1899, when it was bought out by the National Enameling Company, the complainant herein. The affidavit of defendants' selling agent, Ginsburg, states that various other companies named by him have manufactured said infringing ware, and he introduced samples of such infringing ware, now, and for a considerable time prior to this suit, on sale in the open market. The evidence as to acquiescence is insufficient.

The file wrapper of the patent in suit and the specifications of the patent itself indicate that its claims for an article of manufacture were intended to cover those produced by a single process of enameling, as distinguished from the well-known double process. The affidavits of defendants' employés, supplemented by that of Prof. Doremus, are to the effect that the defendants do not use complainants' single process of enameling, but a noninfringing double process. Defendants contend that, if the patent in suit be construed to cover such double process, it is anticipated.

The claim of infringement is not satisfactorily met by the bare denial that the process used by the defendants is that of the patent in suit. Nor is there any force in the suggestion that the reason for this is that the defendants did not care to disclose a secret process, when it appears that the alleged inventor of this process, prior to this suit, had indicated his willingness to disclose his process to the public by an application for a patent which is still pending. ·

Nor is the evidence as to the utility and practicability of the patent in suit met by the threadbare expedient of securing from an expert an affidavit that he has failed to produce a merchantable ware by strictly following the specifications of the patent.

Defendants' affidavits have failed to satisfy me that the Claus patent is invalid, or that it has not been infringed by them. But, in view of the admitted distinction between single-coated ware and double-coated ware and the evidence from the file wrapper of the patent as to the limitation by the patentee of the broad invention originally claimed by him, by virtue of which limitation he obtained his patent, and from the specifications and the claims thereof, from which it appears that it covers a single-coated ware only, a serious question is raised as to its construction and scope. If it be so extended as to cover double-coated ware, there is a serious question of anticipation upon the affidavits; and, in view of the prior art as shown by Vollrath and Niedringhaus, these doubts cannot be satisfactorily resolved upon affidavits.

In these circumstances, and in the absence of satisfactory proof of sufficient acquiescence, I think the preliminary injunction should not

be granted, provided the defendants furnish a bond of indemnity for $25,000, and a weekly account of sales and deliveries such as was ordered by Judge LACOMBE. In the event of their failure to do so within one week, the motion for preliminary injunction may be granted.

In case of any dispute as to the terms of the order, the question may be submitted to Judge LACOMBE.