REGINA CO. v. NEW CENTURY MUSIC BOX CO.

(Circuit Court, S. D. New York. June 15, 1905.)

PATENTS—INVENTION—MUSIC BOX.
    The Brachhausen & Reissner patent, No. 500,371, for a music box, is
    void for lack of patentable invention, in view of the prior art, which
    discloses every element of the combination shown in the patent that in-
    volves invention, in substantially the same combination.

## In Equity.

Suit to restrain alleged infringement of United States letters patent No.
500,371, dated June 27, 1893, application filed December 19, 1892, and issued
to the alleged inventors, Gustav A. Brachhausen, of Hoboken, N. J., and Paul
Reissner, of Eutritzsch, Germany. The suit originally claimed infringement
of United States letters patent No. 637,367, but, after the evidence disclosed
the state of the art at the time that patent was applied for, the complainant
withdrew all claims of infringement of that patent. The defenses are summed
up in the proposition that in view of the prior art the patent in suit, No. 500,-
371, fails to disclose patentable invention; also clear anticipation. Prior
public use is alleged.

Briesen & Knauth (Antonio Knauth, of counsel), for complain-
ant.

Holden & Rogers (Henry Samuel Morton, of counsel), for defend-
ant.

RAY, District Judge. The patent in suit relates to that kind of
music boxes in which discs or rotary note plates are used to
operate the vibrating tongues. It consists of a mechanism designed
to facilitate the removing and putting in place of these discs. This
frequent removal is necessary to change the tunes. This mechan-
ism also drives or rotates these discs by means of small openings or
depressions in the discs near the outer edge or periphery thereof,
which engage with a sprocket wheel. There is also a hinged rod
having friction wheels at short distances apart, which, when the rod
is in position, press gently upon the revolving disc, which is turned
or revolved by the said sprocket wheel, and thereby (such pressure)
keep the disc evenly upon the vibrating tongues placed in line from
near the center to the circumference of said disc, and beneath same,
and also under the said rod. There is a central pin or pivot about
which the disc revolves, and from this the disc is easily removed
by lifting it up after the rod spoken of is raised. There is an adjust-
able sleeve on this pin or pivot beneath the disc, when in place,
which supports the disc. The rod spoken of is hinged outside the
outer edge of the disc, and may be swung completely over, so as to
point away from the pin or pivot; but, when in position for use,
such rod, with its friction wheels, has the free or unhinged end
attached to the central pivot and fastened by a latch. Unhitch the
latch, throw back the rod, and lift off the disc; place another disc
in the same position, engaging one of the openings with the sprock-
et wheel, bring the rod back into place, and fasten it with the catch.
These are the movements for removing and replacing the discs.
The disc, as stated, is turned by the revolving sprocket wheel

which engages with the openings or depressions near the periphery of the disc.

The following quotation from the specifications points out the defects or difficulties claimed to exist in the prior art, and which this alleged invention described in the patent in suit was designed to remedy or overcome:

"Our invention relates to that class of music boxes wherein discs or rotary note plates are used to operate the vibrating tongues, and consists in the novel arrangement and combination of parts hereinafter described, and specifically pointed out in the claims. Heretofore in this class of instruments rotary note plates or discs have been driven from a shaft located in the central portion thereof, which shaft was operated by suitable mechanism. This was objectionable for many reasons. The motion imparted by the shaft located as above described was jerky and unsteady, which is a serious disadvantage in this character of devices. It required, in music boxes built upon a large scale, that the power for rotating the disc be very great, and it was found difficult to operate the disc to the slight degree often required. The object of our invention is to provide a simple device, which, with comparatively little power, will rotate the disc in a steady, positive manner, and to the smallest degree when necessary."

It seems clear that these specifications allege (1) that in the prior art the music discs were rotated by means of a revolving shaft at the central portion of the disc (the shaft, however, not being integral with such disc), which shaft was operated or turned by suitable mechanism; (2) that the rotating of the music disc by means of this centrally located revolving shaft gave to such disc an uneven, jerky, unsteady motion, and necessarily interfered with the musical sounds produced, and perhaps with the contact of the disc with the vibrating tongues; (3) the movement of the disc by this means, when the machine was operating, required great force, and it was difficult to impart slight, even motion. The purpose or object of the invention was to overcome these alleged defects or difficulties.

The claims of the patent are as follows:

"(1) In a music box, the combination of the disc, A, having apertures, b, near the outer edge, and having playing edges, i, with the sprocket wheel, c, adapted to engage in said apertures, b, and means substantially as described for holding the disc down by pressure from above, substantially as and for the purpose specified.

"(2) The combination of the disc, A, means substantially as described for rotating said disc from the outer part thereof, rod, d, and friction wheels, e, mounted thereon, and adapted to bear upon the outer face of said disc, A, substantially as described.

"(3) The combination of the disc, A, provided with apertures, b, near the outer edge thereof, sprocket wheel, c, adapted to engage in said apertures, central pin, a, and adjustable sleeve, z, for supporting said disc, A, and upper bar, d, having friction wheels, e, all arranged substantially as and for the purposes set forth.

"(4) The combination of the disc, A, provided with apertures, b, near the outer edge, with sprocket wheel, c, adapted to engage in said apertures and rotate the disc, hinged rod, d, friction wheels, e, hung thereon, and adapted to bear upon said disc, A, central pin, a, and latch, g, substantially as described."

Of these claims, claim 4 is the more specific. It mentions all the elements of the combination referred to in all the others, except the adjustable sleeve for supporting the disc at the center. If these defects and difficulties existed in the prior art, and had not been met

and overcome by others by substantially the same means or mechanism, or combination of means or elements, and Brachhausen & Reissner, by the combination and means before described, and more fully described in the patent itself, met and overcame them, and it required or demanded more than the skill of the ordinary mechanic, skilled in the construction and operation of such devices or instruments, to make and apply the combination described in the patent, there was a field for invention, and this patent came in and occupied the field, and is valid. I find and hold there was invention—inventive skill displayed—in transferring the power for moving the disc from the center to the periphery, supporting the disc both at the center and a point near the circumference, and holding the disc in place by means of the rod and friction wheels.

The elements of the combination described in the patent are: (a) The disc with holes or depressions near the circumference to engage the sprocket wheel. (b) The sprocket wheel so located as to engage these openings or depressions in the disc. (c) The central pivot or pin, on which is a movable or adjustable sleeve. These support the disc at the center, and keep it in place. (d) The hinged rod with friction wheels to keep the disc steady and even, and pressed upon or against the vibrating tongues.

But while there was invention in transferring the power from the center to the circumference, adopting means for steadying the disc, etc., the question is, are the patentees in the patent in suit entitled to the credit? Did they originate this change? Did they make this combination?

The statement in the patent in suit, "Heretofore, in this class of instruments, rotary note plates or discs have been driven from a shaft located in the central portion thereof, which shaft was operated by suitable mechanism," gives the distinct impression that means for rotating or driving the discs by power applied at or near the periphery of the disc were theretofore unknown, or at least that these discs in such machines had not been rotated in that manner. The other statements already quoted are to the effect that, because driven by power applied at or near the center, the difficulties to be remedied arise. The inventive idea, if there be one, seems to reside in transferring the means for rotating the disc from near the center to near the circumference thereof.

Turning to the prior art, in United States letters patent No. 267,-482, dated November 14, 1882, for music box, issued to Miguil Boom, of Port Au Prince, Hayti, we find a brass or other metal annular disc rigidly mounted on a short vertical shaft journaled in a base, and a top crossbar. The disc is thus adapted to rotate in a horizontal plane. The disc is provided at its edge (circumference) with a projecting flange or ridge which fits into a notched or recessed guide lug attached to the inner side of the frame of the music box, whereby the disc is guided, and vibrations thereof are prevented. A circle of teeth project from the underside of the outer edge of the disc, and these engage a pinion (a cogwheel with teeth) which is mounted on the inner end of a shaft which is turned or revolved by a crank, or any machinery, or by clockwork. The disc

is provided with grooves and teeth. The bar has a comb, with teeth, etc., and as the disc revolves the music is produced. We have here a disc revolved or turned by means of power applied at or near its periphery. We have double means for keeping the disc in place and in steady contact with the teeth. The circle of teeth projecting from the underside of the disc, with which the teeth of the pinion. or cogwheel mounted on the shaft for turning it, engage, form an element, or combination of elements, which are the mechanical equivalent of the openings or dents in or near the periphery of the disc in the patent in suit and the sprocket wheel, and which engage with each other to turn or revolve the disc. The whole idea of revolving the disc by power applied at the periphery instead of the center of the disc is there. So of the bar. They are not equivalents in the strict sense, but the general idea is there. Turning again to the prior art, we find that November 28, 1892, 20 days before the filing of the application for the patent in suit, one O. P. Lochmann, of Leipsic, Germany, filed an application for a patent for a musical box, in which were two claims, viz.:

"In musical boxes, a second disc, A, laid upon the note disc so as to cover the same, both discs being held in position by stud, C, said disc, a, being driven by engagement at its circumference with the driving mechanism, for the purpose specified, substantially as described and shown. (2) In musical boxes, a driving mechanism, T, which is carried in a frame fixed to one of the sides of the musical box so as to be readily removable, for the purpose specified, substantially as described and shown."

Turning to the drawings which accompany the claims and specifications, we find the music plate or disc adapted to turn or rotate, as in the patent in suit, on a suitable pin or pivot in the center, and removable therefrom. The same is true of the second disc. We have also a sleeve which supports these discs, but it does not appear whether or not it is adjustable. In place of the hinged rod of the patent in suit, we have a second disc, nonmusical, superimposed on the first or musical disc, and which at the circumference extends beyond the main or musical disc, being of greater diameter. Near the center pin or pivot is a stud which holds and carries this second disc on the same spindle or center pin or pivot as the main or musical disc is carried. This second disc lying on top of the musical disc keeps that rigid and steady, and, in a degree, prevents the jerky and unsteady motion referred to in the specifications of the patent in suit, and also maintains even contact with the vibrating tongues below. In this second disc, at its periphery, as in the disc of the patent in suit, are holes, apertures, or depressions which engage with the teeth of a sprocket wheel as in the patent in suit, and which wheel is the same in all essentials, if not exactly the same, as in the patent in suit, and is located in the same place, and acts in the same way to rotate the musical disc, except that in the patent in suit we have the apertures or depressions to engage the sprocket wheel in the circumference of the musical disc, while in the Lochmann application and patent (for it was subsequently patented) we have them in the supplemental disc. The great advantage of this is that with this construction it is only necessary to have apertures,

holes, or depressions in the nonmusical plate, instead of in each of the musical plates. In this application of Lochmann we find no suggestion of anything new or novel in having the driving mechanism at the periphery instead of near the center of the disc, and an engagement there of the disc with the sprocket wheel. Lochmann seems to assume in his application that it was old in the art to revolve the disc or musical plate by means of power, sprocket wheel, or other wheel with teeth, engaging with the disc at its periphery instead of near the center. That such was the fact is apparent. Indeed, this court will take judicial notice of the fact that it was old more than 30 years ago to turn wheels with cogs on the edges, or on the underside of the edge, and revolving on a pin at the center, by means of engagement with another cog or sprocket wheel turned by the water or steam power, located at or very near the edge of such first-mentioned wheel, answering in this music-box construction to the disc or musical plate. The said application of O. P. Lochmann was granted May 30, 1893, 27 days before the patent in suit was granted, and, so far as the two relate to means for revolving or turning the disc by wheels or other means situated near and engaging with the disc at the periphery thereof, they are substantially identical. The ideas of means are the same. The construction differs but little, not materially. I can find no patentable invention in the hinged bar with friction wheels. The idea of pressing evenly on a given surface to keep it engaged with another surface or with other things below it is old, and a dozen different ways of accomplishing the purpose will readily occur to any skilled mechanic. The rod might lie on the revolving plate, but in so doing we would have too much friction. Place the rod made round in a single roller of the general shape and construction of gas pipe, and the purpose is accomplished. Have one or ten or twenty pieces, as necessary. Make them short or long, as desired. The idea of antifriction wheels has been old ever since carts and cars and wagons and other wheeled vehicles took the place of stoneboats and like construction for long-distance transportation purposes. Each and every element found in complainant's patent is old. Is the combination new, and does it produce new and useful or beneficial results? Do these old elements so coact as to produce a new and a beneficial result, or some old result in a much better or improved way? Have we a mere aggregation, so far as the addition of this hinged arm provided with friction wheels is concerned?

In the prior art we find United States letters patent No. 374,127, issued to O. P. Lochmann November 29, 1887, application filed September 8, 1887, for "musical box," and which "has for its object to provide novel means for rotating the circular note plate [disc] of a music box," and in which the musical disc is supported at the center by a nipple and threaded bolt (the equivalent of the central pin or pivot of the patent in suit), around which it rotates. It is kept in place by a nut, instead of the end of the pivoted rod with friction wheels, and is supported at the outer edge or periphery. Here, at the outer edge (periphery), is located the power by which the disc is rotated, and here such disc is engaged therewith and ro-

tated in three different modes. One of these constructions, says the specifications, is:

"The note plate is conducted in a slot on the nipple, e, but on the upper surface of the nipple. The shaft, f [part of the means for rotating the disc], is in this case provided with a collar, m, lying with an elastic washer, n, upon the note plate [disc], p. In turning the crank [which revolves the shaft, f, which connects with the cogwheel or sprocket wheel that rotates the disc], a pressure is exerted on the shaft, f, which pressure is transmitted by the elastic washer to the note plate, p, so that the latter is conducted between the collar, m, and the nipple, e. Any vibration of the note plate is avoided by this arrangement, which, moreover, has the advantage that the note plate can be more easily put in and changed, as after the removal of the crank the note plate does not find any resistance in its periphery."

There are found in the prior art, and in substantially the same constructions, means to accomplish the same purposes mentioned in the patent in suit. Everything is done in substantially the same way, except to press the note plate evenly by means of the hinged rod with friction wheels. This, in the patent in suit, acts independently of the other elements. It is hinged at one end, and, when in place, fastened or locked to the center pin or pivot at the other. It simply exerts a pressure on the note plate, and serves to insure its contact with the vibrating tongues. It has no other function, and nothing whatever to do with serving or accomplishing the purposes of the patent. Its action is distinct. It does not coact with the other elements of the combination of the patent. I fail to find invention in adding this element to the prior art. We have no new result by so doing—no improved result from the combination.

Attention should be called to the United States letters patent, No. 425,935, April 15, 1890, to Ehrlich—music sheet for mechanical musical instruments. In this we have an arm answering to, and serving the same purpose as, the pivoted arm in the patent in suit, and that patent says:

"The bar, f, is hinged at one end to the chest, p, while at the other end it is secured in such a manner that it may with facility be released and lifted in order to allow the disc, a, to be exchanged."

It seems to me clear that, in view of the prior art, no patentable invention is disclosed in the combination of the patent in suit. I must so find, having in mind the presumption of validity that attends the complainant's patent, and the necessity for strict and convincing and satisfactory proof of the prior art.

It has well been said, in substance (Lourie Implement Co. v. Lenhart, 130 Fed. 122, 64 C. C. A. 456):

"A copy of the thing described in a patent, either without variation, or with such variations as are consistent with its being in substance the same thing, is for all the purposes of the patent law the same device as that described in the patent. Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. One who claims and secures a patent for a new machine thereby necessarily claims and secures a patent for every mechanical equivalent for that device, because, within the meaning of the patent law, every mechanical equivalent of a device is the same thing as the device itself. A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another by the same means, or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

The sliding, slotted, adjustable plate of the appellant, with its thickened, flat-tened lower edge or foot by the side of, and seven-eighths of an inch distant from, the edge of the share of the plow, involves the same principle, has the same mode of operation, and performs the same function—the regulation of the tilting of the plow—by mechanical means equivalent to the adjustable sliding plate of Lenhart, with its thin edge bent against the plowshare, so that it may slide under its edge when it is depressed below it. One may not escape infringement by adding to or substracting from a patented device, by changing its form, or by making it more or less efficient, while he retains its principle and mode of operation and attains its result by the use of the same or of equivalent mechanical means. Walker on Patents, §§ 347, 348; Sewall v. Jones, 91 U. S. 171, 183, 23 L. Ed. 275; Coupe v. Weatherhead (C. C.) 16 Fed. 673, 675."

In the patent in suit I find nothing done that an ordinary mechan-ic skilled in this art would not have done in the exercise of that skill, having the prior art in mind and before him.

The complainant's patent is invalid, and the defendant is entitled to a decree dismissing the bill, with costs.