## DODGE COAL STORAGE CO. v. NEW YORK CENT. & H. R. R. CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1907.)

### No. 93.

PATENTS—INVENTION—STORAGE APPARATUS.

    The Piez & Beaumont patent, No. 668,960, for a storage apparatus designed to remove and convey material such as coal from one pile or fixed point to another, and No. 688,111 to the same patentees for an improvement thereon, are void for lack of patentable invention; the structure being merely the adaptation of well-known devices to a special purpose, which required no more than engineering skill.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 139 Fed. 976.

This cause comes here by appeal from a decree of the United States Circuit Court for the Northern District of New York, dismissing bill alleging infringement by defendant of complainant's patents, No. 668,960, granted February 26, 1901, and No. 688,111, granted December 3, 1901, to Charles Piez and Robert H. Beaumont, and assigned to complainant, for improvements in storage apparatus. The opinion of the court below is reported in 139 Fed. 976.

Charles Howson and Howson & Howson, for appellant.

R. S. Taylor, George C. Wing, and E. M. Hulse, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The court below, upon a review and discussion of the idea of the patentees of the removal and conveyance of material from one pile or fixed point to another pile or fixed point, thus making "a large area tributary to a single central point," and of the means provided by them for accomplishing these results, reached the conclusion that the idea was not novel, and that "engineering skill was adequate to the work," and, referring to the prior art, said as follows:

"In patent to E. L. Clark, October 15, 1889, No. 413,031, we find a pit directly under a revolvable tower, a tower mounted on an open turntable or pivot open in the center, with a hoisting apparatus inside taking coal from the pit up through the interior or open center of the tower and discharging it into a chute which carries it into a pile outside. A car on a track at the surface of the ground is discharging coal into the pit. The elevating machinery is operated by an engine mounted on the turntable. Now, attach to this tower at proper elevation the truss or bridge structure to support the elevating and carrying apparatus, and support that structure at its outer end by a leg, if required, and we have in principle and in substance, and in every substantial detail, the complainant's devices. In the prior art, patent to one G. H. Hulett, December 13, 1892, No. 487,865, we have a car of coal immediately under a hollow tower discharging coal into a bucket just outside the tower, which bucket, by means of a hoisting and carrying apparatus, is carried up to and along a horizontal truss structure or arm, and may be dumped at any point desired. This horizontal truss or arm, which supports the hoisting and carrying apparatus, is pivoted on the open tower, which supports it at the end where the load is lifted, and is supported again towards its outer end by another tower, which is movable, and carried by wheels upon a circular track. * * * In fact, ordinary engineering and mechanical skill, operating with the well-known devices of the prior art to produce a storage apparatus for covering all available space within the interior of a defined circle, had no difficulty in constructing the devices of the complainant's patents, and alleged to be infringed by defendant. In determining whether or not inventive skill, as contrasted with mere mechanical or engineering skill, has been displayed, we are to consider the art in which the work in question was done, the state of that art, and the results attained."

We concur in these views.

The criticism of the opinion of the court below as to the Clark patent, that its "sheet metal tower must be strong enough to resist the inward pressure of coal," relates to the mere matter of substitution of wood for metal, an everyday engineering and mechanical operation. The other criticisms of the Clark patent are directed to the reloading of the coal and its accumulation around the base of the tower, conditions not involved in the requirements of the Clark structure, but provided for in other structures of the prior art. The Hulett patent discloses a structure similar to that of the patent in suit No. 668,960, except that the elevating apparatus is outside the tower, adapted to receive coal at a central point, and provided with a rotary arm, whereby material may be distributed in any part of a semicircular yard. Furthermore, the patents in suit are specifically for "storage apparatus." They relate "to certain improvements in mechanism for piling coal and analogous material, and for removing material from a pile."

The patentees say:

"The object of our invention is to provide a comparatively cheap structure which will pile material in a semicircular or circular pile from a fixed point, and remove material from the pile to a fixed point."

The would-be inventor or designer of novel mechanism for accomplishing these objects, therefore, is presumed to have before him the whole field of the art of engineering construction applicable to the collection and removal, the elevation and conveyance, of such materials from one point to another. And the question here presented is, not what these particular patentees may actually have invented, but whether the state of the art in such engineering field was such that it would require invention to construct such apparatus, or to adapt the

constructions known in the art to the exigencies of a particular situation, or the requirements of a certain class of materials.

The prior Stough patent No. 172,202, of 1876, discloses every element of the claims in suit in the combination as stated in said claims. It is true that the Stough patent is for a machine for boring wells. But this is immaterial in view of the facts already discussed, and that the problem here was purely one in engineering construction. The patent discloses an apparatus designed to receive material, analogous to coal, namely, loose earth, bored out and removed to a fixed central point in the progress of the work, and to elevate it through the open centers of the support and rotating frame, and to deposit it into a conveyor, by which it is conducted or removed and piled at a point outside the machine. But it is argued that the Stough structure is differentiated from that of the claims in suit because its elevating mechanism does not also convey the material, while in the patent in suit No. 668,960 the mechanism is described as being "one mechanism for both elevating and conveying the material." But such a construction is shown in the Hulett patent, referred to above, and elsewhere in the record, and it is manifest that it required nothing more than the skill of the engineer to use such mechanism in connection with the elevating apparatus shown in the Stough patent. It is further argued that the Stough "machine does not operate to return any material which may have been heaped around it"; that "in the Stough apparatus there is no grab bucket * * * ascending a tower and passing out under a truss," and no rotating hollow tower high enough to permit the unobstructed outward passage of the elevating and conveying apparatus.

But the claims in suit of patent No. 668,960, claims 1 and 2, are not directed to any such details of construction or operation of the conveying apparatus. Such details are covered by the other claims of said patent, and by the claims in suit of patent No. 688,111. The claims in suit of patent No. 668,960 cover broadly any pivoted open centered structure, swinging on a fixed structure, provided with any elevating and conveying mechanism on said pivoted structure, arranged to elevate material through said open structure, substantially as described. We conclude, therefore, that the patentees did not devise any novel means by which to carry out their ideas and put them in shape for practical operation.

In Dunbar v. Eastern Elevating Co., 81 Fed. 201, 26 C. C. A. 330, a case which, in the general situation presented, was strikingly similar to the case at bar, this court said as follows:

"He effected a new organization of a portable elevator, but if this did not involve invention, but was that which could have been done by the skilled mechanic by selecting known devices, applying them to their appropriate uses, and introducing such modifications of detail to fit them for the new environment as would be dictated by experience and good judgment, the patent cannot be sustained. It is manifest from what has been said of the prior state of the art that what Dunbar did was to adapt well-known devices to the special purpose to which he contemplated their application. The elevator, with all its equipment for reaching, raising, and transferring grain, was at hand. Various forms of portable elevators, carried by wheels and moved upon tracks, were at hand. To adapt his elevator to the new occasion, it was necessary that a track should be located in such relation to the warehouse that the elevator could be moved upon it back and forth to reach vessels lying at the dock, and

discharge their contents into the warehouse. The devices known to builders and in common use for moving similar structures were at hand, and it was, only necessary for him to select them with reference to the particular structure to be moved. It was necessary to select a more powerful windlass and a stronger cable, if he proposed to move an elevator of large size and weight, than would be required to move one of smaller size and weight. It was necessary that appropriate fastening devices should selected to secure the elevator to the warehouse when doing its work of discharging from the vessel, and these were at hand, in great variety of forms."

In New Departure Bell Co. v. Bevin Bros. Manufacturing Co., 73 Fed. 469, 19 C. C. A. 534, this court said as follows:

"It may be a hardship to meritorious inventors, who, at the expenditure of much time and thought, have hit upon some ingenious combination of mechanical devices, which, for aught they know, is entirely novel, to find that, in some remote time and place, some one else, of whom they have never heard, has published to the world, in a patent or a printed publication, a full description of the very combination over which they have been puzzling; but in such cases the act, none the less, refuses them a patent. The real invention here is the combination of a base plate with a revoluble striker bar, * * *. But this precise mechanism was described and published to the world in the Bennett patent, and is used in complainant's bell with no other reorganization of operative parts than the insertion of an additional gear and pinion wheel, and such a shifting of the spring as introduces no new function. In our opinion, such unsubstantial changes do not involve invention."

These conclusions dispense with the necessity of considering the second patent in suit. If there is no novelty in the main invention, there can, confessedly, be none in the minor appliances covered by the second patent, which are only useful in connection with the means shown in the first patent.

The decree is affirmed, with costs.