WINSTON v. CROTON FALLS CONST. CO.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

No. 96.

PATENTS (§ 328*)—INVENTION—APPARATUS FOR MAKING CONCRETE BLOCKS.
  The Winston patent, No. 849,824, for an apparatus for making concrete blocks, comprising a platform movable along a trackway and a plurality of molds between the rails and on either side of such trackway into which concrete may be shoveled from the platform, all the parts of such apparatus being old, does not disclose patentable invention.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by James O. Winston against the Croton Falls Construction Company. Decree for defendant, and complainant appeals. Affirmed.

This cause comes here upon appeal from a decree of the Circuit Court, dismissing a bill in equity for infringement of a patent. The patent is No. 849,824, April 9, 1907, to complainant for "apparatus for making concrete blocks."

John K. Macdonald and Eugene S. Macdonald, for appellant.

O'Brien, Boardman & Platt (Frank H. Platt and Livingston Platt, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The specification recites that in the construction of viaducts, dams, etc., it has become the practice to employ blocks of concrete or artificial stone, which blocks are molded or formed in the locality where the work is in progress, the ingredients being suitably mixed and the composition prepared in bulk and then distributed to the various molds; that experience had shown the work of making these blocks to be slow, tedious, and expensive; that many thousands of large blocks would sometimes be required, each block being so large as to require the use of derricks to handle it after it had been made. In the drawings and specifications the patentee sets forth one form of his improvement.

In the yard where these blocks are to be made there are two trackways, *A* and *B,* on which run trucks which support a traveling platform upon which is placed a mass of the concrete material from which the blocks are to be formed. There is a loading device, such as a derrick, for depositing the concrete upon the flat surface of the top of the platform; such platform being preferably formed by placing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a sheet of metal on it for facilitating the operation of shoveling. The patentee says:

"The tracks *A*, *B*, are preferably placed apart a suitable distance to permit the concrete molds *G* to be placed there between the truck platform, being of such a height above the ground line as to pass over the tops of the molds *G*. Outside of and on either side of the track *I* arrange rows of molds *H*. It will thus be seen that extending lengthwise of the trackway and between such tracks are rows of molds *G*, while rows of similar molds *H* extend lengthwise the track outside the rail. The mass of material is dumped upon the platform, and the operators standing thereon may shovel or otherwise deposit and distribute the material into the molds between the tracks and those alongside the tracks; the truck (platform) in its progress being moved along, thus enabling the line of molds, which may extend any suitable distance—for instance, 200 yards—to be filled successively. When the material in the mold has settled and hardened, so that a complete block is formed, the molds may then be knocked down or moved, and the block or blocks conveyed to the place of use by any suitable means."

The claims are:

"1. An apparatus for manufacturing molded blocks, comprising a platform movable along a trackway, a plurality of molds arranged between the rails of the trackway, and a plurality of molds arranged alongside and outside of the trackway, the construction being such that the material may be distributed from the platform to the molds between the rails and to the molds outside the trackway."

"2. An apparatus for manufacturing molded blocks, comprising a trackway, a plurality of molds arranged in the space between the rails of the trackway, a plurality of molds arranged alongside of and outside of the trackway, a platform movable along the trackway and upon which the material is deposited in bulk and from which said material is distributed to the molds between the rails and to the molds outside the trackway as the platform is moved from place to place on the trackway, such platform being of sufficient height to pass over the molds between the rails."

All the elements enumerated in the claims are old. There were trackways on which moved receptacles which contained mixed-up concrete and from which such concrete was passed into molds. These moving receptacles sometimes passed over the top of the molds as they moved from place to place. There could be no invention in making the receptacle stronger and mounting it on heavier trucks with a broader wheel base, if it was to pass over several molds at the same time. The only novel feature about the entire arrangement is the location of the molds—"a plurality in the space between the tracks" and "a plurality alongside and outside of the trackway." By this arrangement more molds can be filled at the same time. But a mere improvement in the method of doing the work does not necessarily lie within the boundaries of patentable invention. In the opinion of Judge Hough, who heard this cause at circuit, is found the following:

"The complainant has apparently devised an organization for a concrete block yard showing skill in economics and marked executive ability, yet he has utilized the old materials and old tools, not in a patentable combination, but only in economical sequence. What he uses he does not utilize in combination to produce a new mechanical or material result; but he arranges the order of work so as to minimize both labor and transportation, and this, in my judgment, is not patentable."

This is in accord with the views expressed by this court in Dodge Coal Co. v. N. Y. C. & H. R. R. Co., 150 Fed. 738, 80 C. C. A.

404, for improvements in storage apparatus. In that case the idea of the patentees was the removal and conveyance of material from one pile or fixed point to another pile or fixed point, thus making "a large area tributary to a single central point." We said:

"The would-be inventor or designer of novel mechanism for accomplishing these objects, therefore, is presumed to have before him the whole field of the art of engineering construction applicable to the collection and removal, the elevation and conveyance of such materials from one point to another. And the question here presented is not what these particular patentees may actually have invented, but whether the state of the art in such engineering field was such that it would require invention to construct such apparatus, or *to adapt the constructions known in the art of the exigencies of a particular situation,* or the requirements of a certain class of materials."

See, also, our opinion in Dunbar v. Eastern Elevator Co., 81 Fed. 201, 26 C. C. A. 330, where the patent was for an improvement in grain elevators, consisting of a combination whereby a portable elevator tower was arranged to be moved along so as to reach the different hatches of a vessel, and so that two elevator legs may be simultaneously used. We held that what Dunbar did was to adapt well-known devices to the special purpose for which he contemplated their application. To the same effect is our opinion in Fowler v. City of New York, 121 Fed. 747, 58 C. C. A. 113, where the patent was for "a new plan for handling the large number of passengers who patronize the public vehicles provided for rapid transit in large cities," consisting of a succession of "island stations" of tracks with loops and arrangements for crossing at different levels and a regulation of the movements of express and local trains. We held that to plan all these details would undoubtedly require ability of a high order, but not inventive genius. Reference may also be had to Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991.

The case at bar is within the principles enunciated in these decisions. Winston's contribution to the art was simply due to the evolution of the business. If the blocks were to be used in building a small culvert or railroad farm crossing, all that would be necessary would be a few molds placed conveniently to a roadway and a wagon loaded with concrete and drawn by a horse alongside of the molds. When the work increased in size, the roadway would naturally be replaced by rails forming a track, and the wagon by a flat car or similar platform running on the tracks and moved, perhaps, by steam power, with rows of molds on each side of the track to receive the concrete. When the work grew to still larger proportions, the question would naturally present itself how the molds and the concrete-bearing moving platform might be arranged relatively to each other to insure the greatest economy of time, space, and labor. But that would be purely an engineering problem, and its solution would not come within the field of patentable invention.

Decree affirmed, with costs.