AMERICAN GRAPHOPHONE CO. v. GIMBEL BROS.

(District Court, S. D. New York. June 2, 1916.)

No. 11/176.

1. PATENTS ☜328—INVENTION—DOUBLE USE.

The Phillips patent, No. 623,925, for a music-cabinet, has, as an indispensable element of each of the claims, a "series of pockets or receptacles adapted to receive the music-disks when not in use," which pockets were old and perform no different function in combination of the patent than in the old devices from which they were taken, and showing only the required and self-suggested changes necessary to adapt them to the new and analogous use, and the patent is void for lack of invention.

2. PATENTS ☜328—VALIDITY AND INFRINGEMENT—PHONOGRAPH.

The Hawthorne patent, No. 671,625, claim 5, for a phonograph or graphophone with the recording, reproducing, or shaving device so adjusted as to adapt them to use with sound record cylinders of different diameters as limited by the prior art, held not infringed.

3. PATENTS ☜27(1)—INVENTION—DOUBLE USE.

The mere fact that a double use of an existing device produces cheapness or a better result, or has a wider range of use than before known, does not, of itself, bring the new use within the domain of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 31; Dec. Dig. ☜ 27(1).]

4. PATENTS ☜328—INVENTION—GRAMOPHONE NEEDLE BOX.

The Sheble patent, No. 730,169, for a gramophone needle box, in view of the prior art, is void for lack of patentable invention, and also for lack of co-operative relation between the parts of the combination.

5. PATENTS ☜328—VALIDITY AND INFRINGEMENT—TALKING-MACHINE.

The Emerson patent, No. 777,615, for a disk talking-machine, adapted for reproducing from records of both the zigzag and up and down types, as limited by the prior art, held not infringed.

6. PATENTS ☜328—VALIDITY AND INFRINGEMENT—GRAPHOPHONE REPRODUCER.

The Macdonald patent, No. 830,446, for a graphophone reproducer, as limited by the prior art and the proceedings in the Patent Office, held not infringed.

7. PATENTS ☜168(2)—CONSTRUCTION—REJECTION OF CLAIMS.

Where claims are rejected by the Patent Office on reference to prior devices and others substituted by the applicant, the claims as allowed, must be interpreted with reference to the rejected claims, and cannot be con-

strued to cover either what was rejected or was disclosed by the references.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. ⬤168(2).]

8. PATENTS ⬤328—INFRINGEMENT—TALKING-MACHINE.
The Kraemer patent, No. 899,874, for a talking-machine, relating particularly to the manner in which the sound boxes are connected to the sound conveying and amplifying devices, limited as it must be to avoid anticipation by the prior art, held not infringed.

9. PATENTS ⬤58—ANTICIPATION—FOREIGN PATENT.
While a United States patent may not be invalidated for anticipation by a foreign patent of prior date if the invention is shown to have been made by the American patentee before such date, the burden rests upon the patentee to establish such priority beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. ⬤58.]

10. PATENTS ⬤328—INFRINGEMENT—TALKING-MACHINE.
The Macdonald patent, No. 957,694, for a talking-machine of the disk type, in which the reproducer is carried at the end of a swinging arm capable of moving transversely across the face of the record during the act of reproduction, limited as it must be to avoid anticipation by the Jetter patents, Nos. 750,977 and 776,183, held not infringed.

11. PATENTS ⬤112(4)—PRIORITY OF INVENTION—PRESUMPTION FROM DECISION OF PATENT OFFICE.
A decision of the Patent Office, determining priority in interference proceedings, is not binding upon the courts, and not even of weight as raising a presumption, where it was entered by consent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 165; Dec. Dig. ⬤112(4).]

In Equity. Suit by the American Graphophone Company against Gimbel Bros. On final hearing. Decree for defendant.

C. A. L. Massie and Ralph L. Scott, both of New York City, for plaintiff.

Charles N. Butler, of Philadelphia, Pa., for defendant.

THOMAS, District Judge. This is the usual bill in equity, charging the defendant with infringement by sale of a talking-machine known as "The Keen-O-Phone" of seven letters patent of the United States, as follows: The Phillips patent, No. 623,925, dated September 12, 1899; the Hawthorne patent, No. 671,625, dated April 9, 1901; the Sheble patent, No. 730,169, dated June 2, 1903; the Emerson patent, No. 777,615, dated December 13, 1904; the Macdonald patent, No. 830,446, dated September 4, 1906; the Kraemer patent, No. 899,874, dated September 29, 1908; and the Macdonald patent, No. 957,694, dated May 10, 1910. The bill charges that the alleged inventions described in the patents are capable of conjoint use, and are conjointly used by the defendant, and this allegation is not controverted. The answer denies the validity and infringement of each of the patents.

*I. The Phillips Patent, No. 632,925.*

[1] The invention of this patent is described in the specification as relating—

"to a new and useful music-cabinet designed for use in connection with a music-producing mechanism; and the objects of the invention are: First, to furnish a new and improved case or cabinet for supporting the mechanism such as is ordinarily used in music-boxes, and at the same time to furnish pockets or receptacles, for the disks or tune-sheets used in connection with such music-boxes and for sheets of music, if required; and, second, to so construct the cabinet as to give improved tone to the music of the character described," and "is adapted for use in connection with that class of musical instruments which are worked automatically and which use a music-disk or tune-sheet which is adapted to revolve, bringing either openings or projections in contact with the fingers or operating comb-teeth."

The patent contains two claims, and infringement of each of them is charged. These claims are as follows:

"1. In a music-cabinet, the combination of a series of pockets or receptacles adapted to receive the music-disks when not in use, a sounding-board placed above such receptacles, a horizontal partition above the said sounding-board, a space between said horizontal partitions and said sounding-board for the reception of the operating mechanism, and a space above said horizontal partition in which latter space the music-disk is adapted to revolve.

"2. The combination of a series of pockets or receptacles adapted to receive the music-disks when not in use, a sounding-board above said pockets or receptacles, an arch E, a horizontal partition above the arch E, said arch E extending from the sounding-board to the said partition, a space between the partition and the sounding-board for the reception of the operating mechanism, a space above said horizontal partition for the reception of the disks when in operation, a door adapted to close said pockets or receptacles which receive the music-disks when not in use, and a lid adapted to close the space above the horizontal partition, all substantially as described."

The defendant has introduced in evidence several prior patents and several prior uses showing musical constructions and pockets for holding music upon which it bases the contention: First, that the claims of the patent are simply a bringing into juxtaposition of old devices from the prior art; and, second, that when so brought together in the patent in suit, there is no co-operation or coaction between them, and no double effect is produced or double duty performed by the combined result. The test in all cases of this kind is, Does the result come from the combined effect of the several parts, or simply from the separate action of each? If the former, it is patentable; if the latter, it is not. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Pickering v. McCullough, 104 U. S. 318, 26 L. Ed. 749; Barnes v. Vandyck-Churchill Co., 213 Fed. 636, 130 C. C. A. 300; Regina Co. v. New Century Music Box Co. (C. C.) 138 Fed. 903; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

It does not appear that the claimed "series of pockets or receptacles adapted to receive the music-disks when not in use," which is an indispensable element of each of the claims, has any functional relation to the "sounding-board" or "the space between said horizontal partition and said sounding-board for the reception of the operating mechanism," or the "space above said horizontal partition in which latter space the music-disk is adapted to revolve."

Furthermore, "the series of pockets or receptacles adapted to receive the music-disks when not in use" are confessedly old, and perform no different function in the combination of the patent in suit than they did in the old devices from which they were taken, and the case

is clearly the adaptation of an old device to an analogous purpose in practically the same art, with the required and self-suggested changes. If it is, it is clearly a double use, and not patentable. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200; Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Seiler v. Fuller & Johnson Mfg. Co., 121 Fed. 85, 57 C. C. A. 339; Western Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294.

## II. The Hawthorne Patent, No. 671,625.

[2] The invention of this patent relates "to phonographs, graphophones, and similar machines the object being to secure adjustments of the recorder, reproducer, and shaving knife relatively to the phonogram blank or the sound record cylinder." The purposes of the patentee are explained by his description in his specification, as follows:

"It is evident from the construction that whatever may be the diameter of the sound-record cylinder the recorder, reproducer, or shaving-knife carried by the bracket *D'* may be adjusted radially of said cylinder to accommodate any one of said devices to a cylinder of greater or less diameter. Thus if the machine has been in use with a phonogram or cylinder of small diameter and it is desired to use one of greater diameter or one that is commonly known as 'concert size' the recorder, reproducer, or shaving-knife may be adjusted radially outward to accommodate said device to the larger phonogram or cylinder. Of course a reverse adjustment may be used when changing from a large to a smaller phonogram or cylinder. It will also be seen that according to the construction above described the recorder, reproducer, or shaving-knife may be adjusted lengthwise of the arm *B*, according to the character of the record to be made or reproduced. For example, if a light engraving of the sound-record is required, a better result is obtained by placing the recorder substantially in the position shown in Fig. 1, and the reproducer should occupy the same position when it is in use. If a heavy engraving is required, such as a record of a band, it is better to place the recorder at the right-hand end of arm *B*, or at the back of the phonogram-blank, as in such position the limiting-weight or the weight of the diaphragm bears heavier on the recording-stylus, and hence a deeper cut will be made.

"With the heavy engraving the reproducer may be thrown to the back of the phonogram, and thus the angle best suited to a proper reproduction secured. Again, it may be found desirable to place the recorder or reproducer at the front of the cylinder for certain records. With the present form of adjustment it is possible, by moving the recorder or reproducer along the arm *B*, to ascertain precisely the position of the said devices or either of them, best suited to the work required."

Only the fifth claim of this patent is in issue, and it is as follows:

"5. In a phonograph or graphophone comprising a sound-record cylinder, an arm supported on the frame of the machine, and embracing the sound-record cylinder, a recording, reproducing, or shaving device supported on said arm, and means to adjust said devices lengthwise of said arm, substantially as described."

[3] The substantial defense of this claim is that the patent is for a cylinder machine, and that the claim in controversy is specifically limited to a cylinder machine, and by its definite terms to a "phonograph or graphophone comprising a sound-record cylinder," while the defendant's machine is one having a spiral record or a flat disk, and that the patent shows and describes a circular supporting arm, *B*, "curved on the arc of a circle so as to be concentric with the sound-record cylinder," without which the machine would be inoperative, and that

the claim in controversy is limited to this "arm supported on the frame of the machine and comprising this sound record cylinder," and that as defendant's machine has no element that corresponds either in structure, operation, or result to this arm, there is no infringement. The Hawthorne patent clearly belongs to the type shown in Edison patents, No. 465,972, No. 610,706, and No. 437,426, on which Hawthorne has placed the type of device shown in the patent to White, No. 467,530. Whether or not White in his patent, No. 467,530, specifically describes the use or purpose described by Hawthorne, I think it is reasonably clear that the White device is adapted for performing the same purpose as is performed by Hawthorne. Undoubtedly a patentee is entitled to all the uses to which a device can be put, as is the public, but there is clearly, under the authorities, no patentable novelty in a particular double use of an existing device, and the mere fact that the double use produces cheapness, or a better result, or has wider range of use than before known, does not, of itself, bring the new use within the domain of invention as is recognized by the courts. Reckendorfer v. Faber, supra; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307. And manifestly, if the Hawthorne claim in suit could be expanded to cover defendant's construction, it would include and therefore be invalidated by White and Edison, upon the well-settled principle that that which infringes if later anticipates if earlier. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121.

Moreover, the claim in controversy cannot be reconstructed to include the alleged infringement in view of the prior art, as is illustrated by the patent to Berliner, No. 564,586, the structure of which bears substantially the same relation to the Hawthorne device as does the defendant's, to wit, Berliner's sleeve *37* in which is adjustably telescoped the arm *36*, having fixed thereto the sound-box 31, corresponds approximately to defendant's journaled tone-arm having adjustably telescoped therein the tone-arm section fixed to the sound-box.

My conclusion therefore is that, in view of the secondary character of the patented invention as recited in claim 5, this claim cannot be so extended as to include the defendant's device. In order to sustain the charge of infringement, substantial identity between the elements of the combination must be found in their capacity to do the same work in substantially the same way, and it is not sufficient to say that they will do *one* part of their work in substantially the same way. If the differences in organization introduce different modes of operation except in a single instance and the identity is partial and incomplete instead of general, there is no infringement. Westinghouse Air Brake Co. v. N. Y. Air Brake Co., 119 Fed. 874, 56 C. C. A. 404.

There is nothing in the plaintiff's contention to justify the claim that the weight of the arm *B* is communicated to the stylus, or that such arm oscillates with the stylus, and indeed such a construction of the patent does not seem to be tenable in view of the description and drawings, by which the weight of the arm *B* must be carried by the rods *A* and *I*, the arm having the roller which runs on the front rod, and being raised with the arm to clear the cylinder of the tools by turning a spring pressed cam screw.

### III. The Sheble Patent, No. 730,169.

[4] The invention described in this patent, according to the specification—

"has relation to gramophone-needle boxes, and has for its object the provision of a box or case of novel form adapted to contain new needles and old ones in separate compartments, so that the new needles may be easily and quickly picked out of the case and the old needles deposited therein and maintained in a separate compartment, without danger of getting them mixed or of mistaking one kind for the other.

"The needles used on gramophones and like instruments are minute objects, and, being subjected to wear and damage, must be removed and replaced from time to time, and as it is desirable to preserve the old needles, it is necessary in order to avoid the tedious and difficult operation of picking out a new needle from a mass of new and old ones mixed together, to keep them in separate receptacles, or at least in separate compartments in a single receptacle. If kept in boxes or drawers having vertical sides and a flat bottom, the needles, or some of them, will lodge in the angles of the box and prove aggravatingly hard to find and pick up.

"In carrying my invention into effect I provide a neat compact box made of two pieces of wood hinged together, one forming the body and the other the lid of the box, and I form in the body part a plurality of concave or semispherical or similarly-shaped cavities having concave bottoms, and I fit a flat disk with a central hole in a groove at the edge of one of said cavities, so that it will be flush with the upper surface of the body of the box, or nearly so. The lid of the box, which is a single flat piece, shuts down tightly on the body, and completely closes the concave cavities and is secured in its closed position by a spring-catch and prevents the needles from falling out of the respective cavities in which they are contained or becoming mixed with the needles in the other cavity."

Both claims of the patent are in issue and are as follows:

"1. A gramophone-needle box composed of a block having separate cavities for the reception of old and new needles, a lid adapted to close both cavities and a disk covering one of said cavities and having a hole in its center, whereby one cavity is left uncovered when the lid is opened, substantially as described.

"2. In a gramophone-needle box, the combination with the body of the box, composed of a single block of wood having two concave cavities in its upper surface, one of said cavities being formed with a grooved edge, of a disk fitted in said groove and formed with a central hole and a lid hinged to the body of the box and adapted to tightly close both cavities, substantially as described."

The defendant, in its alleged infringing device, does not use "a gramophone-needle box" or "a lid adapted to close both cavities," or a lid "whereby one cavity is left uncovered when the lid is open," or a box or lid "substantially as described," as required by claim 1; and it does not use a "gramophone-needle box" having "a lid hinged to the body of the box and adapted to tightly close both cavities," or the construction substantially as described in claim 2. The essential characteristic of each of the claims of the patent is "a gramophone-needle box" having the characteristics recited in each of the claims.

The construction of these claims must be determined by the state of the art and what occurred in the Patent Office. An examination of the file wrapper and contents shows that the case turned in the Patent Office on the lid construction recited in the specification of the patent already quoted from, and that in carrying the invention into effect the

inventor provided "a neat, compact box made of two pieces of wood hinged together, one forming the body, and the other the lid of the box," and that "the lid of the box, which is a single, flat piece, shuts down tightly on the body, and completely closes the concave cavity, and is secured in this closed position by a spring-catch, and prevents the needles from falling out of the respective cavities in which they are contained, or becoming mixed with the needles in the other cavity." The application was rejected by the examiner, whereupon the patentee distinguished his case from the references by stating distinctly that "applicant's box is fitted with a flat, hinged lid, which tightly closes both cavities and prevents the needles in one cavity from becoming mixed with the needles in the other."

Undoubtedly if an inventor presents a broad claim and strikes it out and then presents and obtains an equally broad claim, he loses no right by such action, and may justly claim that his allowed claim is a broad one and have relief accordingly, but the case does not fall within that rule. There was here clearly an express limitation to specific means and construction as a condition precedent of obtaining the grant. The difference between the application as made and as allowed consisted of something more than mere changes of expression for substantially the same meaning, and to give the patent the broad construction contended for would be directly in the teeth of the well-settled rule that where an inventor seeks a broad claim which is refused, in which refusal he acquiesces, substituting therefor a narrower claim, he cannot be heard to insist that the construction of the claim allowed shall cover that which has been previously rejected. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 45 L. Ed. 95; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 40, 14 Sup. Ct. 28, 37 L. Ed. 989; Knapp v. Morss, 150 U. S. 221, 227, 14 Sup. Ct. 81, 37 L. Ed. 1059; Winchester Repeating Arms Co. v. Peters Cartridge Co., 184 Fed. 333, 106 C. C. A. 363.

This view of the patent is supported by the patent to Waite, No. 367,941, and the patent to Garson, No. 305,171, and the patent to Cogswell, No. 186,307, which the defendant has offered in evidence as part of the prior art. Waite and Garson each show it to have been old prior to the patent in suit to use a box having two compartments for different articles and a hinged lid for tightly closing both compartments, as, indeed, does Cogswell in his patent. The Simonds patent, No. 248,617, shows a box having two concave compartments for holding matches and burnt sticks, and Utley's patent, No. 121,069, shows boxes comprising compartments containing concave cavities in combination with hinged lids for tightly closing the same, the hinged lid having a second concave cavity for holding water. The Valentine patent, No. 187,434, shows boxes having a box containing a concaved cavity covered by a lid.

I am forced to the conclusion that in view of the prior art, what Sheble did was, broadly construed, within the circle of what was well known before, and belonged to the public, and all that Sheble did

was to apply an old process to a new subject without any exercise of the inventive faculty, and without the development of any idea which can be termed new or original. If this was all that he did, certainly there is no patentable novelty, in view of the authorities cited.

Furthermore, there is no co-operative relation or combination between the ring *D* for the cavity *C* and the cavity *B*, and between the ring *D* and the lid *E*, and between·the two cavities *B* and *C*, as is required by the patent law. Reckendorfer v. Faber, supra; Pickering v. McCullough, supra; Cameron Septic Tank Co. v. Village of Saratoga Springs (C. C.) 151 Fed. 242; Dodge Cold Storage Co. v. N. Y Cent. & H. R. R. Co., 150 Fed. 738, 80 C. C. A. 404.

### IV. The Emerson Patent, No. 777,615.

[5] The patent relates, as the specification states—

"to disk talking-machines in which the sound-box, with its diaphragm and reproducing-stylus, is carried by a swinging arm pivoted some distance away from the turn-table and is fed across the disk by the record-groove itself. The sound-records commonly employed with this type of machine contain the record-groove in the form of grooves of uniform depth, containing lateral undulations corresponding to the sound-waves. The sound-box is arranged so that its diaphragm is at right angles to the disk; that is, vertical. Another form of sound-record contains the record in the form of a groove of varying depth, the irregularities consisting of vertical undulations corresponding to sound-waves. The first-mentioned records are conveniently spoken of as 'zigzag' records. The other type I shall refer to as 'up and down' or 'vertical.'

"The object of the present invention is to adapt a talking-machine for reproducing from records of either type.

"The invention consists in providing means for supporting the sound-box interchangeably, so that its diaphragm may lie either practically parallel with the record-disk or at right angles thereto and in adding a small attachment in place of the ordinary needle."

This patent contains five claims, but the charge of infringement is restricted to claims 3 and 5, which are as follows:

"3. The combination of a sound-box and means for supporting it interchangeably with its diaphragm either parallel to or at right angles to the surface of the sound-record."

"5. The combination with a sound-box and its diaphragm, of supporting means therefor that holds said diaphragm in operative position for a laterally-vibrating stylus, said means being adjustable to present said diaphragm in another position operative for a vertically-vibrating stylus."

The issues involved in this patent are, broadly speaking, the same as those involved in the prior patents under consideration, and present the questions of anticipation, aggregation, want of patentable novelty, and noninfringement. Berliner's patent, No. 564,586, clearly shows a vertically adjustable horizontal bearing, provided with an unnumbered set screw, which corresponds to the horizontal bearing provided with a set screw shown and described in the patent in suit.

Berliner has the horizontal arm which turns in a bearing where it is fixed by a set screw when adjusted, and the arm is provided with an eye or ring. The corresponding horizontal arm, which turns in the bearing where it is fixed by the set screw when adjusted as shown in the patent in suit, and the arm of the patent in suit, is provided with an unlettered eye or "usual split ring." Berliner also has a sound-

box or case and a rigid tube projecting from one side of the case, commencing with a flexible tube, and this flexible tube turns in a ring. Emerson has a corresponding sound-box or case and a rigid tube projecting from one side of the case, connected with the flexible tube, and this tube terminates in a ring at the end of an arm. Berliner's sound-box placed vertically is provided with an eye and stylus for his laterally undulating records, and Emerson has a corresponding sound-box placed vertically and provided with a stylus. The only difference between Berliner and the patent in suit is that Berliner does not show the "L-shaped or angular device" of the patent in suit for playing the vertically undulating record, but the defendant, in its infringement, does not have this "L-shaped or angular device" required for the second adjustment of the Emerson device, for defendant uses the same stylus for both records. Emerson and Berliner both seem to be in the same position with respect of providing means for permitting the sound-box as a whole to move vertically when used with a vertical undulating record, for Emerson neither shows nor describes any means for permitting the vertical oscillation of his sound-box, nor does he refer to the subject, but the means were at hand in the Bell & Tainter patent, No. 341,214. Moreover, sound-boxes adapted to be turned to different positions for use with different styli are shown in Thompson's British patent, No. 7,203 of 1898, and Schoenner's United States patent, No. 630,521.

There is a further necessity for giving the claim of this patent a restricted construction, by reason of the patentee's action pending the application for the patent, where, to distinguish his claims from the patent to Clark & Johnson, No. 624,625, which had been cited as a reference, the patentee said:

"Obviously this old construction is not capable of being adjusted so as to present the diaphragm horizontally"

—and his subsequent insertion of the following claim:

"The combination of a sound-box and means for supporting it interchangeably in different positions as and for the purpose described"

—which was rejected upon reference to the Edison patent, No. 605,667, and canceled by the applicant.

I am therefore forced to the conclusion that if these claims are broadly construed, they are met by the prior art, and if narrowly construed they are not infringed.

### V. The Macdonald Patent, No. 830,446.

[6] The invention of this patent relates more particularly to the reproducer of a graphophone, and has for one of its objects the adaptation of what are called "pivot point" reproducers for use with records of varying depth. It contains five claims, of which the fourth and fifth are alone in issue. These claims are as follows:

"4. The combination of a sound-record with a sound-reproducer having a casing, a sound-conveying tube or chamber, a diaphragm disposed obliquely to the tube or chamber, a stylus-lever fulcrumed between its ends on said casing and having one arm engaging the diaphragm, and a stylus on the other arm vibrating perpendicular to the record.

"5. The combination of a sound-record with a sound-reproducer having a casing, a sound-conveying tube or chamber, a diaphragm disposed obliquely to the tube or chamber, a stylus-lever pivoted between its ends on said casing and having one arm engaging the diaphragm, and a stylus on the other arm vibrating perpendicular to the record."

Pending the proceedings in the Patent Office claims 4 and 5 were inserted in lieu of and to distinguish them from the following original claims 4 and 5, which had been rejected:

"4. A sound-reproducer having a sound-conveying tube, a diaphragm and sound chamber disposed obliquely to the axis of said tube, and a stylus-carrying lever and stylus.
"5. A sound-reproducer having a sound-conveying tube, a diaphragm and sound-chamber disposed obliquely to the axis of said tube, and a stylus carrying lever fulcrumed upon pivot points, and a stylus."

The applicant acquiesced in the rejection, and amended his claims by substituting the present claims 4 and 5, and to distinguish the present claims, which were subsequently allowed, in a letter to the Patent Office emphasized the importance of the perpendicularity, not of the *stylus plane,* but of the *stylus,* by stating that:

"In vertically undulating records this vibration of the stylus perpendicular to the record is quite desirable, as is also the oblique diaphragm, which most nearly resembles the ear-drum in its relation to the sound conducting tube."

[7] It is fairly evident, from an examination of the file wrapper and contents of this patent, that the assertion of this relationship carried the claims through. If that be so, the claims as allowed must be read and interpreted with reference to the rejected claims, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices, and the patentee is estopped from maintaining that the amended claim covers the combination shown in the references, and from claiming a construction of the breadth of the claim that was rejected. Computing Scale Co. v. Automatic Scale Co., supra. So that the only question is whether the defendant uses either of the characteristic features of the specification and claims as limited and accepted by the patentee. I do not think that it does. The defendant uses the type of stylus-lever and stylus both parallel to the diaphragm as shown in the Clark & Johnson patent, No. 624,625, and which was referred to by the Patent Office as anticipating claims 4 and 5 as originally drawn, and from which it was necessary to distinguish Macdonald's claims in order to secure their allowance.

Moreover, the defendant's diaphragm is not oblique to a straight or any tone-arm section or sound-conveying tube connected with a diaphragm chamber as is required by the description and claims of the patent in suit, and in defendant's infringing device the section of the tone-arm or conveying tube directly connected with the sound-box or diaphragm chamber is at right angles to the diaphragm and is connected with the second section, which is parallel to the diaphragm. I do not think there is sufficient identity between the Macdonald patent in suit and the defendant's machine to support the charge of infringement. Noninterchangeability of parts is universally recognized as strongly tending to negative infringement. The fact that the alleged

infringing device may effect the same result does not always determine the question of infringement. The rule on this point is concisely stated by the Supreme Court in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 723 (42 L. Ed. 1136):

> "But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there."

The conclusion is that infringement of this patent cannot be found without giving to the claims in suit a construction of the breadth of those rejected and withdrawn from which the claims in controversy were distinguished because of this "vibrating of the stylus perpendicular to the record." Moreover, the Butterworth patent, No. 707,204, the Emerson patent, No. 777,615 (one of the patents in suit), and the Clark & Johnson patent, No. 624,625, manifestly narrow the range of patentable novelty in the patent in suit, and limit Macdonald to a stylus disposed of at *right angles* to a stylus lever and diaphragm so that a broad construction of claims 4 and 5 of Macdonald's patent would amount to nothing more than the substitution of Clark & Johnson's stylus lever (of the same order as that of Macdonald) and stylus for the stylus shown in the Butterworth patent.

Then, too, the Eldred patent, No. 657,731, and the Bell & Tainter patent, No. 341,214, must be taken as a bar to any actual invention by Macdonald broadly construed, so that the conclusion is still more imperative, in view of these references, that the claims must be limited to the mechanism shown and described, if ground should be found for sustaining them.

### VI. The Kraemer Patent, No. 899,874.

[8] The invention of this patent, as is stated in the specification—

"relates to talking-machines, and has reference particularly to the manner in which the sound-boxes of such machines are connected to the sound-conveying and amplifying devices thereof.

"As is well known, record-tablets for the mechanical reproduction of recorded sounds, whether of cylinder, disk, or other form, are of two types, depending on the character of the undulations of the record-groove, these being termed the vertically undulating and the laterally undulating types. For reproducing sounds from these two types of record-tablets, machines differing in construction have heretofore been required, so that a person having but one machine could use only records of one of these two types.

"The object of my invention is to provide a talking-machine so constructed that it may be used to reproduce sounds from either of these two types of records, differing in the character of the sound-undulations of the record-groove. This is accomplished by providing a sound-box which is arranged to assume either of two operative positions, in one of which the stylus of the sound-box will co-operate with a record of the vertically undulating type to reproduce the recorded sounds, and in the other of which it will co-operate with a record of the laterally undulating type. Thus, the sound-conveying device of the talking-machine, consisting of either an amplifying horn alone or

a combined horn and tone-arm, may have a joint therein, permitting movement of the sound-box to either of its two positions.

"In the preferred embodiment of the invention, a tone-arm is employed, and a joint is provided near the free end thereof, such that the sound-box may be moved from one operative position to a second operative position in which its diaphragm is disposed at a right angle to the plane of the diaphragm when the box is in the first position."

It contains seven claims, all of which are in issue, and which are as follows:

"1. In a talking-machine, a sound-box having a diaphragm and a tubular connection thereto for carrying sounds, said connection having a joint therein permitting movement of the sound-box to either of two operative positions, a single stylus being adapted to vibrate the diaphragm in either of said positions and said stylus projecting in substantially the same direction from the sound-box in both of said positions, substantially as set forth.

"2. In a talking-machine, a sound-conveying tube, and a sound-box pivotally mounted thereon and provided with a single stylus, said box being movable about the pivotal axis through ninety degrees to carry it to either of two operative positions, in both of which said stylus projects in substantially the same direction from the sound-box, substantially as set forth.

"3. In a talking-machine, a sound-conveying tube and a sound-box having a diaphragm mounted on said tube and movable from a position in which the diaphragm is parallel to the axis of the tube to a position in which the diaphragm extends across said axis, substantially as set forth.

"4. In a talking-machine, a sound-conveying tube, a sound-box having a single stylus, and two telescoping tubular pieces, one on said tube and the other on said box, permitting movement of the sound-box relatively to the tube to either of two operative positions, in both of which said stylus projects in' substantially the same direction from the sound-box, substantially as set forth.

"5. In a talking-machine, a sound-conveying tube, a sound-box having a single stylus, two telescoping tubular pieces, one on said tube and the other on said box, permitting movement of the sound-box relatively to the tube to either of two operative positions in both of which said stylus projects in substantially the same direction from the sound-box, and a pin on one of said pieces entering a slot in the other, substantially as set forth.

"6. In a talking-machine, a sound-conveying tube having a tubular portion at its end turned at an acute angle to the axis of the tube, and a sound-box having a stylus pivotally mounted on said portion and adapted to be turned about the same to either of two operative positions, substantially as set forth.

"7. In a talking-machine, a sound-conveying tube having a tubular portion at its end, turned at an angle to the axis of the tube, and a sound-box having a stylus and a tubular piece fixed to the box and telescoping with said portion to permit turning the sound-box relatively to said tube to either of two operative positions, in both of which the stylus of the sound-box projects in substantially the same direction from the sound-box, substantially as set forth."

[9] The prior patents put in evidence as either anticipating or limiting are: (1) A French patent, No. 381,305, to Deutsche Telephonwerke (published January 9, 1908), showing and describing a structure comprising substantially the same means as Kraemer's for effecting the same purpose in substantially the same way, although there is a difference of mechanical details; and (2) the Bontchev patent, Second Addition, No. 8,101, published January 8, 1908, which shows a structure in which a hinge may be placed in the middle like that of a structure similar to the defendant's machine in which the sound-box turns on a pintle or hinge extended through the axis of a joint in the tube, and which also has a sharp elbow between the hinged sections of the

tone-arm. These foreign patents clearly antedate the patent in suit, and while a patent may not be invalidated for anticipation by a foreign patent of prior date if the invention is shown to have been made by the American patentee before such date, yet where anticipation is otherwise clear, the burden rests upon the patentee of the United States patent to establish such priority beyond a reasonable doubt. Columbus Chain Co. v. Standard Chain Co., 148 Fed. 622, 78 C. C. A. 394. I am inclined to the view that Kraemer's claims, if broadly construed so as to include the defendant's device, are anticipated by these foreign patents, and that, if not so anticipated, the claims must be so directly limited to their specific construction as not to include what the defendant uses. It is difficult to reach the conclusion that these foreign patents do not contain an adequate description of a structure which anticipates the Kraemer construction, broadly construed. Each of these foreign patents has the telescoping tubular pieces required by Kraemer's. claims 4, 5, and 7. If "telescoping" is construed broadly enough to cover a construction different from the longitudinal movement of the one tube parallel to the axis of the other, as in the collapsing or expanding movement of the sections of a telescope, Kraemer's advance in the art was, at the most, a change of form of the machine, without a change of mode or operation as a result, and the essential elements of the telescoping seem to me to be found in these two foreign patents, so as to bring the Kraemer patent within the rule that a change of mechanical structure is not patentable unless it produces a new and entirely different result.

### VII. The Macdonald Patent, No. 957,694.

[10] This patent relates to talking-machines, more particularly to the class known as disk machines in which the reproducer is carried at the end of a swinging arm which is capable of moving transversely across the face of the record during the act of reproduction. The object of the invention as stated in the specification—

"is to provide a construction of swinging arm which shall readily respond in a vertical direction to any irregularities in the surface of the tablet and at the same time be capable of freely moving transversely across the face of the record without the necessity of carrying or moving the usual horn, and at the same time be capable of transmitting the sound vibrations from the hollow swinging arm to the horn without loss or modification due to an imperfect or incomplete union between the swinging arm, which moves and the horn, which, during the act of reproduction, is stationary.

"Moreover, the invention has for its object to provide a construction wherein the horn may be readily turned so as to direct the great volume of the sound in any desired direction without the necessity of moving the machine, and, furthermore, of attaching the reproducer to the hollow swinging arm in such a way as to avoid the loss of sound vibrations or modifications thereof through the introduction of false vibrations.

"With this object in view the invention consists of the usual stationary supporting arm attached in any suitable manner to the machine casing, which supporting arm is provided with an annular ledge upon which rests a ring, free to turn in a horizontal plane on the ledge, the interior face of the ring being cut on the lines of a sphere whose center is the center of the ring, combined with a hollow reproducing arm having a spherical end of bearing fitting snugly within the spherical portion of the ring and capable of rocking in a

vertical plane about trunnions passing through the ring and into the spherical portion of the swinging arm.

"Furthermore, the invention consists in providing a flange on the base of the horn which rests on a suitable annular ledge in the stationary supporting arm, said flange being engaged on its upper side by a clamping ring secured to the stationary supporting arm by screws or other suitable devices, the entire joint between the horn, the stationary arm, the ring and the hollow swinging arm being treated with a nonfluid lubricant, such as petroleum jelly or the like, whereby the joint is not only lubricated but is also rendered air-tight, to the end that the sound vibrations are fully and completely transmitted from the hollow arm to the horn without any escape or diminution thereof."

The patent contains 12 claims, of which all but the fifth, sixth, and seventh are in issue, and the claims in issue are as follows:

"1. In a talking machine, the combination of a stationary supporting arm having a horizontal annular ledge, a ring resting on said ledge and having its interior surface corresponding to a spherical zone whose center is the center of the ring, a hollow swinging arm carrying the reproducer at one end, the other end having its exterior surface in the form of a spherical zone fitting snugly within said ring, and diametrically opposite trunnions engaging said ring and hollow arm.

"2. The combination of a swinging arm carrying the reproducer at one end, a ring within which the other end of the arm is joined on lines corresponding to a portion of the surface of a sphere, trunnions securing said ring and arm together, and a stationary arm supporting said ring.

"3. The combination of a swinging arm carrying the reproducer at one end, a stationary arm, a ring mounted on said stationary arm to turn in a horizontal plane and trunnions connecting the ring to the swinging arm to permit said arm to turn in a vertical plane.

"4. The combination of a stationary arm, a substantially horizontal hollow swinging arm having a vertically extending elbow at one end and a reproducer at the other end, a horizontal ring jointed to said elbow on spherical lines, trunnions also connecting said ring and elbow, and a stationary arm supporting said ring."

"8. The combination of a swinging arm carrying the reproducer at one end, a stationary arm having a circular opening provided with a circular bearing upon its inner wall, supporting means supported by and to turn upon said bearing and horizontal trunnions supported by said means and engaging said swinging arm at its other end to permit vertical movement of said swinging arm.

"9. In a talking-machine the combination with a sound conveying tube, a fixed support having a circular opening therein, a horizontal circular bearing provided upon one of said parts, circular supporting means for said tube conforming to said opening and tube and engaging said bearing to support said tube and permit horizontal swinging movement of said tube and opposite horizontal trunnions supported by said fixed support to support said conveying tube and to permit vertical swinging movement of said conveying tube.

"10. The combination of a swinging arm carrying the reproducer at one end, a fixed support having a circular opening in which the other end of said arm is situated, supporting means interposed between the end of the arm situated within said circular opening and said fixed support and movably engaging one of said parts to permit the arm to turn in a horizontal plane, and a connection between said supporting means and the other of said parts to permit said arm to turn in a vertical plane.

"11. The combination of a swinging arm carrying the reproducer at one end, a fixed support having a circular opening in which the other end of said arm is situated, supporting means interposed between the end of the arm situated within said circular opening and said fixed support and movably engaging one of said parts to permit the arm to turn in a horizontal plane, and trunnions connecting said supporting means with the other of said parts to permit said arm to turn in a vertical plane.

"12. The combination of a swinging arm carrying the reproducer at one end, a stationary arm having a fixed support, and trunnions secured to the swinging arm and carried by the fixed support."

An examination of the parts of the specification quoted from shows that the machine to which these claims are drawn is for a previously known type of construction, and that it comprises a tone-arm supported at its upwardly extending rear end or elbow by an outwardly and upwardly extending stationary arm, which "supports a movable horn." The substantial question in this patent turns upon the effect of two patents to Julius Jetter, No. 750,977, issued February 2, 1904, on an application filed March 7, 1903, and No. 776,183, issued November 29, 1904, on an application filed April 28, 1904. The application for the Macdonald patent in suit was filed May 23, 1905, and was issued May 10, 1910. Jetter's patent, No. 776,183, is a modification of an earlier patent to him, No. 750,977, and incorporates in the structure of the earlier patent a movement which apparently has the characteristic features of the device of the Macdonald patent in suit. Jetter's patent, No. 776,183, has on the rear end of its tone-arm a spherical bearing corresponding to the spherical bearing on the rear end of the tone-arm in suit. Jetter also shows in this patent a ring with a spherical interior surface of the bearing of Macdonald's patent, and a ring corresponding to Macdonald's ring. Jetter has a casting fixed at the end of his stationary arm, and provided with an eye or cylindrical opening which corresponds to the eye or cylindrical opening at the top of Macdonald's arm. Jetter also shows in the patent, No. 776,183, trunnions supported by a part engaging a ring, so that it is pivoted in correspondence with the trunnions in Macdonald's construction. It would seem that while Jetter's and Macdonald's trunnions connect different parts, both provide for the lateral and vertical oscillation of the tube, and I think it can be fairly concluded that if Jetter's patents can be carried back of Macdonald's application, they either invalidate the patent and its several claims, broadly construed, or else limit the claims so that the defendant's device does not infringe. Defendant's machine comprises a concealed horn wholly below the disk or horizontal parts of the machine below the turn-table; a fixed cylindrical tube or socket extending through the deck into and forming the mouth of the horn, and having a flange screwed fast to the deck, a rotary, cylindrical tube, which turns in the fixed cylindrical tube or socket with a flange or saddle, which rests on the tube of the fixed cylindrical tube, and a tone-arm which has a downwardly extending rear end or elbow provided with a spheroidal terminus, which is pivoted in the plain cylindrical flange or saddle at the top of the rotary tube; the saddle at the lower end of the tone-arm being wholly above the fixed tube or socket. If the construction of Jetter's patent is inverted, it will show substantially the construction of the defendant's machine as above described, excepting with respect of the differences in detail necessarily involved in the reversal of Jetter's construction for use with a horn below instead of above the tone-arm connecting therewith and other details common to Jetter and the patent in suit which the defendant does not employ.

Applying the well-established test that that which if later infringes anticipates if earlier (Miller v. Eagle Mfg. Co., supra), it must follow that the defendant's machine cannot infringe the Macdonald patent without holding Jetter's earlier device an anticipation, because Jetter's device is closer than defendant's to Macdonald's since Jetter and Macdonald use the overhead horn with the corresponding details of like function for connecting the tone-arm therewith, while defendant has the concealed underneath horn permitting the omission of the details required by Macdonald. Any ground of identity subsisting between the defendant's devices and those of the patent in suit is a ground of identity between the devices of the patent in suit and those shown in the Jetter patents.

[11] The only question, therefore, with respect of this patent is as to the effect of the proceedings in the Patent Office. The earlier Jetter patent was issued more than a year, and the later Jetter patent issued more than six months, before the application for the patent in suit was filed. Macdonald has introduced no proofs attempting to carry his invention back of the date of his application, and the plaintiff relies solely on a consent decree entered in the Patent Office which purports to establish priority to Macdonald. There is no estoppel arising from a decision in interference proceedings in the Patent Office which is binding upon the courts. Such decision is not res judicata; it simply raises a presumption which is for the losing party to overcome. The only issue in interference is one of priority. While an interference decision may, in certain cases, be persuasive, it is not to be allowed to prevail over other considerations which may control. Elliott & Co. v. Youngstown Car Mfg. Co., 181 Fed. 345, 104 C. C. A. 175. Macdonald reduced his invention to practice when he filed with the Patent Office an application containing specifications so careful, exact, and complete that one skilled in the art could, by merely following their construction, produce a machine which will meet the description and produce the results asserted for it by the application. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Sundh Electric Co. v. Interborough Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280. And there is nothing on which Macdonald can be given a date as early as Jetter's patent, No. 750,977. His patent, No. 776,183, was not involved in the interference, and it was issued by the Patent Office prior to the date of the Macdonald application, and by its grant it is presumptively an invention anticipating Macdonald, which presumption could not be overcome by introducing the examiner's decision, if on the merits. It has been held in this circuit by Judge Townsend, in National Enameling Co. v. New England Enameling Co., 123 Fed. 436, that a prior adjudication, sustaining a patent which was entered into by consent as the result of settlements between the parties, and in which the question of the validity and scope of the patent were not considered by the court, is not sufficient as a basis for the granting of a preliminary injunction in a subsequent suit against another alleged infringer, and by Judge Ray in Earll v. Rochester S. & E. R. Co. (C. C.) 157 Fed. 241, that a decree, adjudging the validity and infringement of a patent entered by consent of the parties, is not such an adjudication as constitutes a proper founda-

tion for the granting of a preliminary injunction in a suit against a different defendant. A similar ruling was made by Judge Lacombe in Bishop & Babcock Co. v. Bernstein (C. C.) 123 Fed. 408, that a decree pro confesso cannot be held to constitute prior adjudications of a patent. The defendant's means are those of old and well-known joints, which would invalidate Macdonald's patent if construed broadly to cover defendant's device, and, if narrowly construed, the defendant's do not infringe.

Claims 1, 2, 3, and 4 are limited to the use of a ring which defendant does not have, and claims 2 and 4 require this ring to have a spherical bearing surface which the defendant does not employ.

Claim 8 requires, not only the stationary arm which the defendant does not employ, but also that the stationary arm shall have a "circular opening, provided with a circular bearing upon its inner wall," which the defendant does not employ.

The defendant does not employ "the sound conveying tube" and the "fixed supports having a circular opening in them" and the "horizontal circular bearing" provided on one of said parts, which are recited as elements of claim 9; neither does the defendant use "the circular opening means for said tube conforming to said opening and tube, and engaging said bearing to support said tube," or the "opposite horizontal trunnions supported by said fixed support."

Claim 10 must be limited to "supporting means interposed between the ends of the arms situated within said circular opening and said fixed support" which the defendant does not employ; nor does the defendant employ supporting means "between the end of the arm situated within said circular opening and said fixed support" as required by this claim. And there is the further limitation in claim 10, requiring the "swinging arm" to have its spherical terminus located within the eye at the top of the stationary arm, for this claim states that there must be "a fixed support having a circular opening in which the other end of said arm is situated"; in defendant's device, the end of the tone-arm acts as a saddle that is always above and holds the end of the tone-arm above, not within, the fixed sockets.

Claim 11 also requires the end of the tone-arm to lie within the eye of the tube of the stationary arm which the defendant's device does not have, and there is the further requirement in this claim that the supporting means of the ring "shall lie between the end of the arm situated within said circular opening and said fixed support," which the defendant does not have.

Claim 12 is limited to the "stationary arm," which the defendant does not use.

My conclusion therefore is, with respect of the Macdonald patent, that the plaintiff in any aspect is not entitled to a decree.

Let a decree be entered, dismissing the bill of complaint.

Ordered accordingly.