LIBERMAN'S EX'RS v. RUWELL et al.

(Circuit Court, E. D. Pennsylvania. November 30, 1908.)

No. 11.

PATENTS (§ 328*)—INFRINGEMENT—CIGAR MACHINE.

The Liberman patent No. 668,921, for a combined cigar-rolling table and wrapper-cutter, covers a combination of old elements with a single new and limited feature, which is the vertical motion of the exhaust-box carrying the cutting knife, and is not infringed by a machine combining the same old elements with a differing feature also old.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

John P. Croasdale, for complainants.
Howson & Howson, for respondents.

J. B. McPHERSON, District Judge. This suit is brought upon letters patent No. 668,921, dated February 26, 1901, issued to Isadore Liberman to protect certain improvements in a combined cigar-rolling table and wrapper-cutter. The art relates to a table upon which cigars may be rolled and wrapped, and also to the necessary mechanism for cutting the wrappers and for adjusting the table to the needs of the subsequent process of rolling and wrapping. To cut the wrappers, an

endless knife of an irregularly elliptical form is used, of such size and shape as will cut the leaves in the manner desired. This knife is rigid upon some part of the mechanism, and the operation of producing the wrapper is performed by drawing a roller across its edge, thus, by a slight but sufficient pressure, cutting out the wrapper from the tobacco leaf that has previously been laid upon the knife. Inside the periphery of the knife, and closely adjusted thereto, is a perforated metal plate which moves slightly in a vertical direction under the pressure of the roller. The plate is connected with mechanism for exhausting the air, and by means of suction through the perforations the leaf is held smoothly and evenly in place upon the knife, and also, I believe, small particles of tobacco and other substances are drawn away from the operator. In order that the knife may cut, its edge must be above the surface of the table; but, in order that the cigar may be afterwards conveniently rolled and wrapped, it is desirable that this obstructing projection should disappear, and that the surface of the table should be smooth and uniform. To meet these requirements, namely, the projection of the knife and the evenness of the table's surface, two forms of device have been adopted in the art. In one of these forms the knife is stationary, while the table is raised or lowered, so as in one case to be flush with the knife and thus present a smooth surface for rolling, and in the other case to be depressed below the knife, so as to leave its edge free for the operation of cutting. In the second form, it is the table that is stationary, while the knife is raised or lowered, but the same results are produced as in the form first referred to. Both these varieties of device were well known before the patent in suit was applied for.

The specification—after stating that "the object of my device is to afford improved means for cutting the wrapper of the cigar and maintaining it flat upon the table while the cigar is being formed and rolled"—goes on to declare that the invention (so far as now material) is concerned with a device for raising and lowering the knife:

"My invention comprises improved means for raising the knife above the surface of the surrounding table during the act of cutting the wrapper, and then lowering the same flush with the table to afford a smooth surface for rolling and shaping the cigar."

The operation of the device is then described as follows, the numerals referring to the drawings that accompany the application:

"Upon the exhaust-box 1, which is connected by flexible tube 2 with means for exhausting air, I mount the continuous knife 4, which is adapted to project through the surface of the forming and wrapping table 5, which is apertured to fit closely about said knife. Inclosed within the edges of the knife is the perforated member 6, which lies flush with the upper edges of said knife and is supported on the resilient supports 7, so that said member 6 may be depressed when the roller 8 passes over the leaf resting thereon to permit the knife-edges to cut the leaf. The exhaust-box 1 is vertically movable in the casing 9, and adapted to be raised and lowered by the movement of the cam 10, which is operated by the pedal 11.—that is, it is raised to cause the knife to project slightly above the table 5 when a leaf is to be cut, and is lowered to bring the knife exactly flush with the table when the cigar is to be rolled and wrapped thereon."

165 F.—14

Of the various parts referred to in this description, the exhaust-box with its flexible tube, the continuous knife, the perforated plate with its resilient supports, the roller and the table, were old and well known. The new feature was the vertical motion of the exhaust-box. The knife was supported upon the box, and of course moved up and down with the corresponding motion of its support. Bearing this in mind, it will be seen that (so far as this controversy is concerned) the four claims involved are practically identical:

"(1) In a cigar-machine the combination of a forming and wrapping table, an endless knife adapted to project through said table and also to lie flush therewith, and vertically-movable air-exhaust and knife-supporting means, substantially as described.

"(2) In a cigar-machine the combination of a forming and wrapping table, an endless knife adapted to project through said table and also to lie flush therewith, means for vertically moving the knife and air-exhaust means connected therewith, substantially as described.

"(3) In a cigar-machine the combination of a forming and wrapping table, an endless knife adapted to project through said table and also lie flush therewith, and a vertically-movable exhaust-box supporting said knife, substantially as described."

"(5) In a cigar-machine the combination of a forming and wrapping table, an endless knife adapted to project through said table and also to be flush therewith, a vertically-movable exhaust-box supporting said knife, and a perforated plate fitting within the knife, its upper surface flush with the upper edge of the knife and resting upon resilient supports to permit of a slight depression under pressure, substantially as described."

The only matter in dispute is the defendants' infringement. In a former action before this court between the same parties—No. 8 of October sessions, 1906—the patent was adjudged to be valid, and a fruitful subject of controversy was thus removed from the present litigation. The prior art, however, is still of value in helping to determine the scope of the patent, and, indeed, it must be examined in order that the court may know precisely what the patentee invented and how far he is entitled to protection. As I have already stated, everything about his patent was old except the vertical motion of the exhaust-box, and this was only of significance because the knife was attached to the box and partook of its motion. What the patent covers, therefore, is a combination of old elements with a single new feature, and the invention is not infringed by combining the same old elements with a differing new feature, unless the differing feature merely changes the position of certain parts of the patented device without affecting the principle or mode of operation. Where an improvement is narrow in its character, the inventor is ordinarily confined to his specific device and receives little aid from the doctrine of equivalents. If he depends upon a single limited feature (as is the case here), the doctrine will not ordinarily be applied so as to cover a device in which that feature does not appear. These rules are well known, and in my opinion they require the court to decide that the defendants' machine does not infringe. It is conceded that their device does not have a vertically moving exhaust-box supporting the knife, but embodies mechanism that moves the table up or down relatively to the knife; and complainants are therefore obliged to invoke the doctrine of equivalents, and to argue that (since motion must always be relative) it makes no dif-

ference whether the knife moves or the table moves, and that the essential matter to be considered is whether the same result is produced, whichever of these two members is clothed with the power of motion. Unfortunately for this argument in the present case (whatever its fate might be under other circumstances), the movable table of the defendants belonged to the prior art and antedated the patent sued upon by complainants. It is clearly found in the patent issued in March, 1889, upon the application of John R. Williams, and was therefore available for use in 1906 by the defendants or by any other person. To state the case briefly: The defendants' machine is made by combining a certain number of elements, of which all are old and all were at their service. This combination is attacked for the single reason that one of these elements is an equivalent of the only new feature to which the complainants can lay claim. But to forbid the defendants to use the element in question—the movable table—on the ground of equivalency, is to make the complainants' invention superior to a much earlier patent, and thus to take away from the defendants the right to adopt a device that is not only older than their own machine, but is also older than the machine of the complainants, and indeed has become the property of the public. This, I think, cannot be done, and therefore, in my opinion, there is no room in the present case to apply the doctrine of equivalents in the manner contended for. As against the defendants' table and knife, the complainants' device should be confined to the specific description of the patent, and, if it be thus confined, the device of the defendants does not infringe.

A decree may be entered dismissing the bill with costs.