CRYSTAL PERCOLATOR CO., Inc., v. LANDERS, FRARY & CLARK
(two cases).

(District Court, D. Connecticut.   May 15, 1919.)

Nos. 1477, 1478.

1. ACTION ⬡⇒57(1)—CONSOLIDATION—BILLS FOR INFRINGEMENT OF PATENT.
    Under equity rule 26, a plaintiff may properly join in a single bill two causes of action for infringement of several patents, and hence, where separate suits were brought on a mechanical and a design patent, each for a percolator, it was proper to consolidate them.

2. PATENTS ⬡⇒168(1)—CONSTRUCTION—ARGUMENTS IN PATENT OFFICE.
    Arguments made in the Patent Office by the applicant to the examiners are not to be taken as a measure of his patent, when not accompanied by any changes in the claims, and so need not be considered in construing the patent.

3. PATENTS ⬡⇒35—CONSTRUCTION—SALES.
    In an infringement suit, where complainant's device did not have the structure specified in a claim of the patent, evidence of the sales of the article cannot be considered on the question of the validity of the claim.

4. PATENTS ⬡⇒165—SCOPE—LIMITS.
    The scope of every patent is limited to the invention described in the claims, read in the light of the specifications, and the inventor is entitled to nothing beyond the claims.

5. PATENTS ⬡⇒1—EFFECT.
    A patentee receives nothing from the law which he did not have before; the only effect of his patent being to restrain others from manufacturing,

using, or selling that which he has patented, the purpose of the patent law being to protect him in his monopoly.

6. PATENTS ⬳174—CONSTRUCTION—IMPROVEMENTS.

Where an improvement is narrow in its character, the invention is ordinarily confined to the specific device, and the patentee receives little aid from the doctrine of equivalents.

7. PATENTS ⬳328—CONSTRUCTION—INFRINGEMENT.

The Ricciardelli patent, No. 1,180,881, claim 3, for a percolator support, if construed as valid, notwithstanding the prior art, *held* not infringed.

8. PATENTS ⬳26(2)—COMBINATION PATENTS—VALIDITY.

Generally speaking a combination of old elements, in order to be patentable, must produce by their joint action a novel and useful result, or an old result in a more advantageous way, and the mere bringing of old devices into juxtaposition, and their allowing each to work out its own effect, without the production of something novel, is not invention.

9. PATENTS ⬳328—CONSTRUCTION—VALIDITY.

The Ricciardelli patent, No. 1,180,881, claim 4, for a percolator support, consisting of a combination of a friable receptacle having an upstanding cylindrical neck and the support therefor an upright, a handle pivotably carried by said upright, etc., *held* invalid; the combination producing no new and novel result and not showing invention.

10. PATENTS ⬳28—DESIGN PATENTS—VALIDITY.

To entitle a person to a design patent, under Rev. St. § 4929, there must be originality and the exercise of inventive faculty, which will produce something new and beautiful, and the adaptation of old devices or forms to new purposes, however convenient or beautiful, is not invention.

11. PATENTS ⬳328—DESIGN PATENTS—CONSTRUCTION—VALIDITY.

The Ricciardelli and Bleichrode design patent, No. 47,545, for a percolator, *held*, in view of the prior art not to show invention, and to be invalid.

In Equity. Bills by the Crystal Percolator Company, Incorporated, against Landers, Frary & Clark, which were consolidated. Bills dismissed.

Asher Blum, of New York City, for plaintiff.
Harrie E. Hart, of Hartford, Conn., for defendant.

THOMAS, District Judge. [1] The plaintiff, by assignment, is the owner of a mechanical patent for percolator supports, No. 1,180,881, issued on the 25th of April, 1916, to Fiore Ricciardelli, and a design patent, No. 47,545, for a percolator, issued on July 6, 1915, to F. Ricciardelli and J. B. Bleichrode. Separate suits were brought on each patent. They were tried together and will be decided together. Under equity rule 26 (201 Fed. v, 118 C. C. A. v), as Judge Dickinson says in Eclipse Machine Co. et al. v. Harley-Davidson Motor Co. (D. C.) 244 Fed. 463:

"A plaintiff may now join (upon proper occasion) as many different causes of action as he may have. The only restrictions are that each cause must be one cognizable in equity; that the different rights of action all belong to the plaintiff, or, if more than one, to the plaintiffs jointly; and that if there are several defendants sufficient grounds for joining them must appear."

To meet the spirit of the rule it is better to join such causes of action as are here set forth in the same bill.

The bill based on the mechanical patent charges infringement. The defenses are invalidity and noninfringement. Claims 3 and 4 are in suit. They are as follows:

3. "The herein described percolator support comprising a base, an upright rising therefrom and having a pin projecting vertically from its upper end, a handle having an opening through it removably and pivotally mounted on said pin, a hand grip at one end of the handle, and a collar at the other end thereof composed of two parts whereof one is secured to the handle and the other is hinged to the first part with its free end adapted to lie against the handle, and a clasp for holding said end in place."

4. "The combination with a friable receptacle having an upstanding cylindrical neck, of a support therefor including a base, an upright, a handle pivotally carried by said upright, a two-part collar of channel iron whereof one part is rigidly carried by one end of the handle and the other part is hinged at its outer end to the first part with its inner end adapted to lie against the handle, a clasp slidably mounted on the handle and adapted to embrace such inner end, and packing within the channels of both parts, for the purpose set forth."

The patent in suit relates generally to coffee percolators of the type where there is an upper chamber or receptacle of glass in which the powdered coffee is placed, a lower chamber or receptacle of glass in which the water is placed, and a funnel tube of glass which extends from the upper chamber or receptacle down into the lower chamber or receptacle.

With the application of heat to the lower receptacle the water is heated until there is sufficient pressure created to force the water up through the funnel tube into the upper receptacle, where it mixes with the coffee. When the water has nearly all ascended into the upper chamber, the receptacle is swung away from the flame, and then the condensation in the lower receptacle creates a vacuum, which permits the liquid which has ascended into the upper receptacle to trickle back through the coffee into the lower receptacle. The bottom of the funnel tube is spaced a suitable distance from the bottom of the lower receptacle, so that all of the water in the lower receptacle does not ascend.

The patent in suit is directed specifically to a support for this percolator; the title of the patent being "Percolator Support." That support comprises generally a base, an upright rising from the base, a handle pivotally mounted at the top of the upright, a hand grip at the outer end of the handle, and a collar at the opposite end of the handle from the hand grip for engaging and supporting the percolator parts. The collar surrounding the neck of the globe is made of two parts hinged together. It has a groove to receive a resilient packing that gently, but firmly, grips the globe. The hinged parts of the collar are connected by a sliding clasp, and this arrangement prevents contact between the neck of the glass globe and the collar itself.

The handle carrying this collar is mounted pivotally at its center to an upright carried by a base on which the alcohol lamp is placed, so that the entire percolator can be swung away from the lamp without disturbing it or the base.

Respecting the prior art, it is conceded that the process of making coffee by infusion is very old. It dates back to 1839, with improvements made in 1841 and 1842, all as shown in the British patents to

Vardy & Platow and the French patents to Malpeyre, Hiraux, and Fortant.

It has for years been recognized as a fact that the great objection to all such devices lies in the danger of breakage of the glass receptacle suspended over the flame, with its consequent and manifest dangers, whenever the water in the lower receptacle has arisen to the upper receptacle. A still further objection to using this process of making coffee is due to the inherent fragility of the glass globes employed, causing constant breakage in their handling and cleaning in the kitchen, and the expense incidental to the breakage, so that the sales of this device have never been large, and it is fair to say will never be large, as long as fragile glass globes are employed for this purpose. The use of the device is something of a fad, though the coffee brewed by this process is of admitted superiority.

[2] Counsel for plaintiff, both in oral argument and in their brief, direct with much care the court's attention to the proceedings in the Patent Office as disclosed by the file wrapper, and urge the importance of the final decision of the examiners in chief to sustain the claims in suit. This record shows that, after many amendments to the claims, they were all finally rejected by two different primary examiners, and that on appeal, on an ex parte hearing, the four claims of the patent were allowed by two members of the examiners in chief; the third member being absent. All of the evidence in this record was not before the examiners in chief. In Auto Pneumatic Action Co. v. Kindler & Collins et al., 247 Fed. 323, 328, 159 C. C. A. 417, the Circuit Court of Appeals for this Circuit has held that it is unnecessary to consider what was said by way of argument during the passage of the case through the Patent Office, and that arguments made in the Patent Office by the applicant to the examiners are not to be taken as a measure of his patent, when not accompanied by any changes in the claims. See, also, Spalding & Bros. v. Wanamaker, 256 Fed. 530, —— C. C. A. ——, decided by Circuit Court of Appeals, Second Circuit, February 13, 1919.

[3-7] The history of the art of percolators of the type with which the patent in suit is concerned will first be discussed in order that we may determine what was in the prior art, and all patents here referred to were, as disclosed by the file wrapper, before the examiner in the Patent Office, and reference was there made to them.

The British patent to Vardy & Platow of 1839 shows an early use of a percolator of the type shown in the patent in suit. The inventor says:

"This invention relates to a peculiar construction of apparatus for making extracts of coffee and other matters, whereby the water is caused to boil and pass out of the vessel by the pressure of steam within, and in passing out of the vessel the water enters into another vessel containing a straining or filtering medium, and mixes with the coffee, tea, or other matter placed in such vessel. The heating means being then removed, the steam in the lower vessel becomes condensed, and thereby produces a partial vacuum under the filtering or straining medium, and the atmosphere pressing on the water combined with the coffee or other matter in the upper vessel causes it to filter through into the lower vessel with considerable quickness, and thus is an

extract of coffee or other matter produced with great advantage, both as to the quality and as to the means of making the same."

Thus, as early as 1839, the plan of action of percolator like that shown in the patent in suit was fully and completely disclosed, although the particular form of structure differs from the particular structure shown in the patent in suit.

In June of 1841, French patent No. 8,051 was granted to Malpeyre. From the official translation in the Patent Office, and respecting its operation, the following appears:

"The operation of this apparatus, which is formed of two vessels communicating with each other by means of a joint passage, consists in causing the water contained in a sphere $b$ to boil as a result of the action of the alcohol flame, the alcohol being contained in a receptacle $a$, in order that such water may be enabled to rise into a receptacle $c$ and pass or filter through the pulverized coffee which has been put in the latter vessel. After double boiling and hence double rising of the liquid, the coffee returns to the lower part, the sphere $b$, where it will thus be perfectly clarified, possessing all of its aroma and the necessary heat. In that condition, the receptacle $c$ is removed and the pressure screw $d$ on the end of the rod $e$ is loosened. The sphere $b$ is then lifted off and used as a coffee pot."

In October of 1841, French patent No. 8,507 was granted to Hiraux for a glass coffee machine. The drawings of the patent show three different types of complete percolators, and Fig. 1 shows a device which comprises a base, an upright arising from one side of the base, a handle mounted on that upright, a hand grip at the other end of the handle, and a collar at the inner end of the handle, which encircles the reduced neck of the lower receptacle to support the percolator parts. This handle may be locked in postition to hold the percolator parts while the coffee is being cooked, but it may be released, so that the handle may be turned in the top of the upright for the purpose of decanting the coffee from the lower receptacle.

In May of 1842, French patent No. 6,395 was granted to Fortant "for a steam coffee machine with extinguisher." This patent shows a base, an upright arising from one side of the base, a handle mounted at the upper end of the upright, a hand grip on the handle at its outer end, and a collar at the inner end of the handle, encircling the restricted neck of the lower receptacle, in order to support the percolator parts, which are apparently of glass.

Without discussing all of the defendant's evidence, it will be sufficient to refer only to French patent to Malpeyre, No. 8,051, June 23, 1841, French patent to Fortant, No. 6,935, May 7, 1842, and the Barto device, which appears in the evidence in this case for the first time as an anticipation, although patents to Zimmerman, No. 1,168,988, issued January 18, 1916, and an earlier one to Ricciardelli, No. 1,121,-399, issued December 15, 1914, are in evidence and relied upon by the defendant. It is seriously contended by the plaintiff, however, that these two patents are not properly part of the prior art, and should not be considered as part of the defendant's evidence; but in view of limiting this discussion to Malpeyre and Fortant, it becomes unnecessary to decide whether Zimmerman's and the first Ricciardelli patents are properly part of the prior art.

Ricciardelli was not a pioneer in any sense. He was a mere improver in details, and first attempted to obtain a patent for a "percolator"; but in view of the prior art, and the requirements of the Patent Office, he restricted his claims to a "support" for a percolator.

Defendant's expert testified that the Fortant patent shows a percolator having a glass kettle for the water and a glass receptacle for the coffee, which are connected and pivotally held by a support consisting of a lamp base, a part extending upwardly from the base, and a handle at the top of the post; the handle having a hand grip at one end and a collar for holding the neck of the kettle at the other end. It was also shown that manifestly the handle could not have been supported on this post without reducing the diameter of the top of the post and making a hole through the handle that fitted the post. Above the handle on the post is a retaining nut, with a ring. The percolator can be swung horizontally on the post under the nut, over and away from the lamp. This defendant's expert demonstrated by a drawing (in evidence) which illustrates a reasonable and plausible construction. When this device is used, the upper receptacle is lifted off, and then the kettle taken by the handle and lifted off the post and the brew decanted.

The Malpeyre patent shows a structure of the same class and for the same purpose, consisting of the lower glass globe or kettle, with a restricted neck having a shoulder at its upper end, a glass urn for receiving the coffee, a strainer at the lower side of the urn, and a funnel extending downwardly from the bottom of the urn into the kettle. This structure is supported by a lamp base, a post extending upwardly from the base, a handle on the post, and a collar at the end of the handle, which clasps the neck of the kettle. The specification of this patent sets forth that after the brew is made the top receptacle is removed and nut is unscrewed, and the lower vessel is then lifted off and used as a coffee pot.

The patents to Malpeyre and Fortant show that it was not new with Ricciardelli to pivotally mount coffee percolators of the kind shown and described in his patent, so that they could be swung over the lamp for effecting the brew and away from the lamp when the brew was made.

The date of the publication and prior use of the Barto device have been established beyond a reasonable doubt. Prior publication is conclusively shown to have been as early as 1891, and prior use as early as 1902. The Barto device has the base supporting the spirit lamp, a supporting post extending upwardly from the base and provided with a socket at its upper end, with a handle that has a collar which supports the vessel containing the water to be heated, which handle has a pin projecting downwardly into the socket. This structure is capable of being swung over the flame or away from the flame. The support of defendant's percolator has a post rising upwardly from the base, with a socket in the upper end of the post, and a handle, with a pin projecting downwardly into the socket between the outer end of the handle and the collar, which supports the vessel holding the water.

Ricciardelli is not entitled to claim that he was the first person to conceive of a structure adapted to swing horizontally over a flame or away from a lamp flame. The Fortant and Malpeyre patents show such a structure. United States patent to Timby, No. 173,691, shows a structure having a base with a post rising from the base, and a vessel adapted to hold water or other substances to be heated, provided with a handle and a socket fitting down over the post. In this structure the receptacle can be swung over the flame or away from the flame by turning the handle, or it may be lifted off the post for pouring out the contents of the receptacle.

The description of the specific form of collar which supports the vessel as being composed of two parts, one secured to the handle and the other hinged to the first part with its free end adapted to lie against the handle, does not add patentability to the claim. This court, with reference to a similar question, in American Graphophone Co. v. Gimbel Brothers, 234 Fed. 351, held that the addition of the clamp was without the exercise of the inventive faculty, and without the development of any idea which can be termed original. There is no co-operative relation or combination between the post, pin, and handle with the hole and the two-part clamp, as is required by the patent law to constitute invention.

Upon appeal in that case the Circuit Court of Appeals (240 Fed. 973, 153 C. C. A. 659), speaking by Judge Hough, said:

"If the claims of this patent are taken literally and broadly, they are invalid, as disclosing no patentable invention over Jetter, and as covering aggregations of simple mechanical details not productive of a co-ordinated result."

Consequently there appears to be nothing of substantial novelty recited in the third claim of the patent in suit.

Plaintiff introduced some evidence as to the sales of a percolator which he said was made under the patent in suit. This appears to be immaterial to a discussion of claim 3, for the reason that it does not appear from an examination of the exhibit introduced as a sample of what was sold, and from a reading of the uncontradicted evidence of defendant's expert, that the structure which was sold came within the terms of this claim. It does not have the specific construction described in that claim, and to which that claim must be restricted in view of the prior art.

Therefore the rule that in a doubtful case large sales of a plaintiff's device made according to his patent, and the assumed interfering with those sales by a defendant, does not apply, because the sales, which are only collateral evidence of invention, must be of the structure claimed, and not of something else.

It should be noted that the third claim is for a "support," which includes a base, an upright rising therefrom and having a pin projecting vertically from its upper end, and a handle having an opening through it and removably and pivotally mounted on said pin. No other structure is suggested by Ricciardelli in the patent other than post $F$, pin $f$, handle $E$, with hole $e'$ and nut $f'$, screwed on post above handle.

Defendant's support, as found in plaintiff's Exhibit No. 3, does not have this construction.

The Supreme Court of the United States, in Motion Picture Co. v. Universal Film Co., 243 U. S. 502, on page 510, 37 Sup. Ct. 416, on page 418 (61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959), set forth certain rules which are applicable here. The court, speaking by Justice Clarke, said:

"1. The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification. These so mark where the progress claimed by the patent begins and where it ends that they have been aptly likened to the description in a deed, which sets the bounds to the grant which it contains. It is to the claims of every patent, therefore, that we must turn when we are seeking to determine what the invention is, the exclusive use of which is given to the inventor by the grant provided for by the statute. * * * 'He can claim nothing beyond them.' Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274 [24 L. Ed. 344]; Railroad Co. v. Mellon, 104 U. S. 112, 118 [26 L. Ed. 639]; Yale Lock Mfg. Co. v. Greenleaf, 117 U. S. 554, 559 [6 Sup. Ct. 846, 29 L. Ed. 952]; McCain v. Ortmayer, 141 U. S. 419, 424 [12 Sup. Ct. 76, 35 L. Ed. 800].

"2. It has long been settled that the patentee receives nothing from the law which he did not have before, and that the only effect of his patent is to restrain others from manufacturing, using or selling that which he has invented. The patent law simply protects him in the monopoly of that which he has invented and has described in the claims of his patent. United States v. American Bell Telephone Co., 167 U. S. 224, 239 [17 Sup. Ct. 809, 42 L. Ed. 144]; Paper Bag Patent Case, 210 U. S. 405, 424 [28 Sup. Ct. 748, 52 L. Ed. 1122]; Bauer v. O'Donnell, 229 U. S. 1, 10 [33 Sup. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150]."

On page 511 of 243 U. S., on page 419 of 37 Sup. Ct. (61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959) referring to the scope of the grant, Justice Clarke said:

"These rules of law make it very clear that the scope of the grant which may be made to an inventor in a patent, pursuant to the statute, must be limited to the invention described in the claims of his patent (104 U. S. 118 [26 L. Ed. 639], supra) and to determine what grant may lawfully be so made we must hold fast to the language of the act of Congress providing for it, which is found in two sections of the Revised Statutes."

In Broadway Towel Supply Co. v. Brown-Meyer Co., 245 Fed. 659, 158 C. C. A. 87, the Circuit Court of Appeals for the Ninth Circuit expressed itself as follows, on page 661 of 245 Fed., on page 89 of 158 C. C. A.:

"It will be seen that the appellee's invention is an extremely narrow one, limited as it is by the prior art. If there is any invention in the Brown patent, it consists in the precise combination therein described, and each element specifically pointed out is an essential part thereof."

That statement is particularly apposite here, as well as the quotation in Judge Gilbert's opinion from Liberman's Ex'rs v. Ruwell (C. C.) 165 Fed. 208. In the Liberman Case, Judge McPherson said:

"Where an improvement is narrow in its character, the inventor is ordinarily confined to his specific device and receives little aid from the doctrine of equivalents. If he depends upon a single limited feature (as is the case here), the doctrine will not ordinarily be applied so as to cover a device in which that feature does not appear."

With these rules from the courts of last resort as our guide, even assuming that the third claim is valid, it must be held that the third claim is to be limited to the exact boundaries fixed by the language of the inventor, and that defendant's structure is not within those boundaries, and therefore there is not infringement of the third claim. But I cannot escape the conclusion that there is grave doubt of the validity of this claim, in view of the prior art and the fact that the defendant's support more nearly resembles the support of the Barto device than the support of the claim, and the further fact that, if the third claim is construed broadly enough to include defendant's support, it will include the supports of the prior art.

[8, 9] Claim 4 recites an assemblage of elements. The general combination of the fourth claim—i. e. (1) a friable receptacle having a cylindrical neck; (2) a support; (3) a base; (4) an upright; (5) a handle pivoted on the upright; and (6) a collar at one end of the handle for supporting the receptacle—was old before Ricciardelli entered the field. The distinction between this claim and the other claims of the patent in suit is that the collar is characterized as made in a particular manner; that is, of a channel iron in two parts, one hinged to the other, with a packing in the channel of both parts for the purpose of grasping the neck of the vessel, so that it will not break, and a clasp for holding the hinged parts together.

The law respecting this matter was authoritatively settled by the Supreme Court in Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196. On page 432 of 247 U. S., on page 549 of 38 Sup. Ct. (62 L. Ed. 1196) the court said, also quoting the rule stated in Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241:

"Generally speaking, a combination of old elements, in order to be patentable, must produce by their joint action a novel and useful result, or an old result in a more advantageous way. To arrive at the distinctions between combinations and aggregations definite reference must be had to the decisions of this court. The subject was fully discussed in Palmer v. Corning, 156 U. S. 342 [15 Sup. Ct. 381, 39 L. Ed. 445], wherein the previous decisions were reviewed. The rule stated in Hailes v. Van Wormer, 20 Wall. 353, 368 [22 L. Ed. 241], was quoted with approval, wherein the court said: 'It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination.' Hailes v. Van Wormer, 20 Wall. 353, 368 [22 L. Ed. 241]. In Richards v. Chase Elevator Co., 158 U. S. 299, 302 [15 Sup. Ct. 831, 39 L. Ed. 991], the rule was stated as follows: 'Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements.' In Specialty Manufactur-

ing Co. v. Fenton Metallic Manufacturing Co., 174 U. S. 492, 498 [19 Sup. Ct. 641, 43 L. Ed. 1058], the rule was again tersely stated: 'Where a combination of old devices produces a new result such combination is doubtless patentable, but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368 [22 L. Ed. 241]; Reckendorfer v. Faber, 92 U. S. 347, 356 [23 L. Ed. 719]; Phillips v. Detroit, 111 U. S. 604 [4 Sup. Ct. 580, 28 L. Ed. 532]; Brinkerhoff v. Aloe, 146 U. S. 515, 517 [13 Sup. Ct. 221, 36 L. Ed. 1068]; Palmer v. Corning, 156 U. S. 342, 345 [15 Sup. Ct. 381, 39 L. Ed. 445]; Richards v. Chase Elevator Co., 158 U. S. 299 [15 Sup. Ct. 831, 39 L. Ed. 991].' "

Applying to claim 4 the test above set forth, I conclude that it contains merely a recital of a group of elements which were brought into juxtaposition and each allowed to work out its own end without producing anything new.

The clamp described in claim 4 of channel iron in two parts, hinged together with a packing in the channel of both parts to prevent the glass from being broken, is the same type of packed channel iron clamp as those shown in United States patents to Monehan and Dorner, No. 699,803, and to Morse, No. 276,064.

The combination of the support, the base, and upright with the handle pivotally carried by the upright and the collar for supporting the receptacle is old, such combination being shown in Malpeyre and Forlant, as well as in the Barto device. The only distinction between what is described in the fourth claim and what is shown in these prior references is the pointing out in the claim of a specific form of collar. In the first place, this specific form of collar is aggregated with the specific pivotal support of the handle on the upright.

The construction of the clamp has nothing whatever to do with the mounting of the handle, and the mounting of the handle has nothing whatever to do with the construction of the clamp. Each of these features performs its own and well-known function. In the second place, it would not appear to amount to invention to use the old type of clamp provided for holding fruit jars for holding the neck of a glass percolator vessel. The collar of the fourth claim is made of channel iron to hold the packing. This was a common expedient. The collar was made in two parts, so that it could open and close readily, and if one part was hinged to the other it would follow, as a matter of course, that some type of clamp would be needed to hold the parts together.

The multiplicity of elements recited in the fourth claim does not make it patentable, as each element performs an old and well-known function. No new function is evolved from the combination recited. The new result, so far as one is achieved, is only that which arises from the well-known operation of each one of the elements.

Therefore claim 4 is void for want of invention. Let the bill be dismissed, with costs.

### The Design Patent.

This is the case on the Ricciardelli-Bleichrode design patent, No. 47,545, dated July 6, 1915. Title is in plaintiff by assignment. The claim is for the ornamental design for a "percolator."

[10, 11] Defendant's alleged infringing structure is made under design patent No. 51,199, issued August 28, 1917, to Curtiss for a "standard for coffee machines." Defendant claims that in view of the prior art, the patent is invalid, and, if not invalid, it has not appropriated the novelty of the design.

Design patents are issued on the authority of section 4929, R. S. (Comp. St. § 9475), which provides:

. "Any person who has invented any new, original, and ornamental design for an article * * * not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, * * * may * * * obtain a patent therefor."

Did Ricciardelli and Bleichrode, in view of the prior art, exercise invention and promote the progress of any useful art in producing the design of their patent, and, if so, has the defendant appropriated anything which Ricciardelli and Bleichrode can be said to have invented? is the sole question presented.

Smith et al. v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606, has long been the leading case respecting design patents. Chief Justice Fuller, in distinguishing between mechanical structures and designs, quoted the rule laid down by Mr. Justice Brown, when District Judge, in Northrup v. Adams, Fed. Cas. No. 10,328, 12 O. G. 430, and 2 Ban. & Ard. 567, 568, which is as follows:

"To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new rôle, is not invention. * * * The shape produced must be the result of industry, effort, genius, or expense, and new and original as applied to articles of manufacture. Foster v. Crossin [C. C.] 44 Fed. 62. The exercise of the inventive or originative faculty is required and a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation, the design may be patentable."

The patent in suit shows a base with a spirit lamp and a circular post rising from the base. On the top of the post is a handle with a grip at one end and a collar at the other end, and supported between the grip and the collar. The collar encircles and supports the neck of the glass globe. Extending down into the glass globe is a tube, and mounted upon the top of the globe is a tulip-shaped receptacle provided with a cover.

Among the structures of the prior art relied upon by defendant is the French patent to Fortant, No. 6,935, May 7, 1842. This drawing shows a base with a spirit lamp and a circular post extending upwardly from the base. A handle, with a grip at one end and a collar at the other end, is mounted between the grip and the collar on the post. The collar encircles the upper end of a glass globe and projecting

down into the globe is a tube.    Mounted on top of the globe is a tulip-shaped receptacle provided with a cover.

In general outline and appearance the percolator shown in the Fortant patent is substantially the same as the percolator shown in the patent in suit.   The entire handle in the Fortant patent is not shown, and the cover at the top of the upper receptacle is a little higher than the cover of the patent in suit; but these do not appear to be material distinctions.

If a design patent had been issued for the Fortant percolator, the plaintiff's patent would appear to be an infringement, or, conversely, if the Fortant percolator was now put upon the market, it would appear to be an infringement of the design patent in suit.   Under the rule that that which would infringe if later, anticipates if earlier, it would appear that the Ricciardelli and Bleichrode design was anticipated by the Fortant patent.

However, it does not appear that Ricciardelli and Bleichrode exercised any inventive faculty in producing their design over the design shown in Fortant.   They merely employed the ordinary skill of a draftsman.   There appears to be nothing original in the Ricciardelli and Bleichrode design.   Therefore I conclude, following the rule in the Whitman Saddle Case, supra, that the design patent is invalid for lack of invention and originality.

Even assuming that Ricciardelli and Bleichrode did exercise invention in producing the design of the patent by altering the shape of the Fortant base, handle, and cover, the defendant's device has a base, post, handle, and upper receptacle different in shape from that shown in the patent in suit.   If Ricciardelli and Bleichrode exercised invention in the features which distinguish the design of their patent from the Fortant patent, then Curtiss, the patentee of the design used by defendant, exercised invention in producing his design, and therefore the inventions of the Ricciardelli and Bleichrode patents and the Curtiss patent are not the same and there would be no infringement.

Ricciardelli and Bleichrode do not appear to have exercised invention or to have promoted the progress of the useful arts in any way. If absolute identity of appearance is not necessary to infringement, then identity of appearance is not necessary to anticipation.   In appearance the Ricciardelli and Bleichrode design more nearly resembles the design shown in Fortant patent than it resembles the design found in defendant's structure.

Plaintiff relies upon the rule that the test of identity of design in the invention is the sameness of appearance to the eye of an ordinary observer, and directs attention to an observation made by the court respecting their similarity when the case was tried and the two devices were side by side and offered in evidence by the plaintiff.   The remark then made was based upon the assumption that both devices were made by the plaintiff, in view of the variations appearing in the patent and in the first device offered in evidence, and not respecting their sameness of appearance as bearing upon the question of whether the ordinary observer would take them to be the same.

I therefore conclude that the design of the patent in suit is invalid, as its production did not require the exercise of invention, but, if it be valid, then the defendant's structure does not infringe.

Let the bill be dismissed, with costs.

Ordered accordingly.